DORMAN, J.,
delivered the opinion of the court:
On the application of James H. Devaughn, one of the heirs of William Devaughn, and one of the appellees in this cause, the County court of Alexandria county, under the ninth section of chapter 110, of the Code of 1860, appointed commissioners to assign to the appellant, her dower in the estate of which her husband, William Devaughn, died seized. Under this order of appointment, the commissioners set off to the appellant as such widow, four houses and lots in the city of ^Alexandria, which four houses and lots constituted exactly one third part of the appraised value of the whole estate, of which William Devaughn was seized at his death. To this report and assignment of dower by the commissioners, the appellant excepted in *204 the said County court, on the grounds presented on page twelve of the printed record; which exceptions, at a subsequent term, the said court overruled, and confirmed the commissioner’s report and ordered it to be recorded. From this order of the County court, the appellant took an appeal to the Circuit court of Alexandria county, on the grounds stated on the third page of the printed record. After hearing the cause, the said Circuit court reversed and annulled in part, the order of the County court, and proceeded to make another assignment in part, giving the widow the mansion house in lieu of two houses and lots assigned to her by the commissioners under the order of the County court. From this judgment of the said Circuit court, the appellees took their appeal to the District court for the fifth district; which judgment of the Circuit court' the District court reversed and annulled, and affirmed the judgment of the County court, and the assignment of dower made by the commissioners under its order.
By appeal from this judgment of the District court, the case is brought to this court, and, in the printed statement, the following grounds of appeal and error are assigned:
First. The order of the County court was not the judgment of a court of competent jurisdiction.
Second. The order of the County court, appointing the commissioners and the report of the commissioners are defective on their face and therefore invalid.
Third. The County court erred in not assigning the widow the mansion house.
In determining the validity of the first ground of alleged error, it becomes necessary to enquire into the '^jurisdiction of the County courts in this State. In examining the judiciary system of Virginia, it at once becomes apparent, that from its earliest history, the County court was an especial favorite of the people, and their legislators invested it with the most extensive powers. In the minds of the people, it early became identified with their highest interests. It was ' esteemed a sort of palladium of their liberties; a tower of safety for the deposit of their most sacred rights; and was endeared to them by association with the proudest names in their history, names familiar to' them, and in honoring whom the nation exalted itself.
Hence, as early as 1792, an act passed the general assembly, “reducing into one, the several acts concerning the County and other inferior courts of this Commonwealth.” The extent of the powers thus conferred is fully presented in that act, the fifth section of which, reads: “The justices of any such court, or any four of them as aforesaid, shall and may take cognizance of, and are hereby declared to have power, authority and jurisdiction, to hear and determine all causes whatsoever now depending, or which shall hereafter be brought in any of the said courts at the common law or in chancery, within their respective counties or corporations, and all such other matters, as by any particular statute is, or shall be made cognizable therein;” and in the seventh section, the act further provides : ‘ ‘The said courts shall be held at their several respective places, in every' year, except as hereinafter excepted, for the trial of all presentments, criminal prosecutions, suits at common law and in chancery, when the sum exceeds twenty dollars or eight hundred pounds of tobacco, now depending, or which shall hereafter be brought in any of said courts.” In section five of the above named act, criminals of a specified class are exempted from trial before these courts.
In the several Codes of 1819, 1849 and 1860, even *down to the acts of 1866-7, this same extended jurisdiction is continued and confirmed to the County' courts in all civil causes. So partial has the Virginia legislation been to this County court system, as to have made it the general depository, the fountain head of power, from which, from time to time, they have diverted some streams into other seemingly' less favored channels. And it is a noticeable fact, that in the last acts of 1866-7 the general assembly conferred upon the Circuit courts concurrent jurisdiction with the County and Corporation courts, “in all cases in chancery and all actions at law. ’ ’
From these numerous acts, thus continued from its existence as a State, it is apparent that the County courts of this State are courts of the most general jurisdiction in1 all civil causes; inferior only because their judgments can be reviewed by an appellate tribunal, and in no sense courts of special and limited powers, and wholly differing from the County courts of most of the States. From the earliest time to the present, they have been invested with the most extensive powers, such as are elsewhere conferred upon courts of Common pleas, Circuit and Chancery courts. See Harvey v. Tyler, 2 Wall. U. S. R. 328. I<n courts of general jurisdiction,, the rule of law is, “that every presumption, not inconsistent with the record, is to be indulged in favor of the jurisdiction.”
But by the counsel of the appellant, it is urged that “the authority of the County court in this case is special 'and summary, and being ex parte, every fact essential to the exercise of its jurisdiction must appear' affirmatively upon the record.” The statute authorizes the assignment of dower to the widow by the heir, or by application to the court in which the will is admitted to record, to have the same assigned by .commissioners. The Countycourt has general jurisdiction over the probate of wills, and admits them to record. Though the *power to appoint these commissioners for the assignment of dower was conferred by statute, yet the rule of law is still applicable. In the case of Harvey v. Taylor, the court declare, “in all those cases where the new powers thus conferred are to be brought into action, in the usual form of common law or chancery proceedings, we apprehend there can be little *205 doubt that the same presumptions, as to the jurisdiction of the court and the conclusiveness of its action, will be made, as in cases falling more strictly within the usual powers of the court.”
In the case of Voorhees v. The Bank of the United States, 10 Pet. U. S. R. 449, the validity of a sale of certain property in Ohio, under a foreign attachment was questioned, on the ground, that the record of the court, in which the attachment proceedings were, did not show, that the steps required by the statute prior to a sale, were taken. In that case the defendant was a non-resident. His land was levied on, condemned and sold, as far as it appeared by the record in the cause, without an affidavit, without notice by publication, without his being called at three different terms of the court, and without waiting twelve months from the execution of the writ before the sale; all of which were required by the statute authorizing the proceedings. In the absence of jurisdiction over the person of the defendant, the record did not show, that these important provisions for the protection of his rights were performed. Counsel contended, that all these requisitions of the statute must not only have been carried out before the court had power to order a sale of the property, attached, but that the record must show their performance. In reply to this position the court said, “The provisions of the law do not prescribe, what shall be deemed evidence that such acts have been done; or direct that their performance shall appear upon the record.” They proceed to state, “We *do not think it necessary to examine in the attachment suit, for evidence that the acts alleged to have been omitted appear therein to have been done. Assuming the contrary to be the case, the merits of the present controversy, are narrowed to the single question, whether the omission invalidates the sale. The several courts of Common pleas of Ohio, at the time of these proceedings, were courts of general jurisdiction ; to which was added by the act of 1805, the power to issue writs of attachment, and order a sale of the property attached, on certain conditions; no objection, therefore, can be made to their jurisdiction over the case, the cause of action, or the property attached.”
The court adds this general proposition: “There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears.” In the case of Grignon’s lessee v. Astor et als., 2 How. U. S. R. 319, the validity of a sale of land, under an order of the County court of Michigan, by an administrator for the payment of debts, was called in question. The court says, “After the court has passed upon the representation of the administrator, the law presumes, that it was accompanied by the certificate of the judge of probate, as that was requisite to the action of the court; their order of sale is evidence of that or any fact which was necessary to give them power to make it; and the same remark applies to the order to give notice to the parties. This is a familiar principle in ordinary adversary actions.”— “And the principle is of more universal application in proceedings in rem, after a final decree by a court of competent jurisdiction over the subject matter.”—“These principles are settled as to all courts of record, which have an original general jurisdiction over any particular subjects: they are not courts of special or limited jurisdiction ; they are not inferior courts in the technical sense of the term, because *an appeal lies from their decisions. ’ ’ “These principles have been applied by this court to sales made under the decisions of Orphans courts; where they have power to judge of a matter of fact, they are not required to enter on record the evidence on which they decided that fact.” Such has been the uniform current of adjudications in the Supreme court of the United States, and, it is believed, those of most of the States have maintained the same doctrine.
If such is the law of this State, it certainly determines the point taken by this exception. In the case of Fisher v. Bassett et al., 9 Leigh 119, Judge Tucker says: “The County court is a court of record, and its judgments or sentences cannot be questioned, collaterally, in other actions, provided it has jurisdiction of the cause. ’ ’ “And this is to be understood as having reference to jurisdiction of the subject matter; for though it may be, that the facts do not give jurisdiction over the particular cause, yet, if the jurisdiction extends over that class of cases, the judgments cannot be questioned, for then the question of jurisdiction enters into and becomes an essential part of the judgment of the court.” Judge Parker, in the same case, says: ‘ ‘The distinction between the acts of a court having jurisdiction over the subject matter under some circumstances, and those of one which, in no possible state of things can take jurisdiction over the subject, is a sound and sufficiently intelligible one to guide our judgments in the present case. If, under any circumstances, the Hustings court could grant administration to Scott, it had jurisdiction of the subject and must judge of those circumstances.” These opinions .of Judges Tucker and Parker are referred to by the court in a case, reported in 10th Grattan, and there approved and confirmed.
In the statement of errors, we are referred, by the counsel for the appellant, to the case of Stevens v. Stevens, 3 Dana’s Ken. R. 371, as sustaining this exception. *In reference to that case, it is sufficient to remark, that the rule of law, applicable to the County courts of Kentucky and to those of this State,, is totally different. It has been seen, that the latter are courts upon which have been conferred the most general powers, possessing all those usually given to courts of Common pleas, Circuit and Chancery courts. Whereas, the former have no general juris *206 diction, and merely a limited and special one. See 2 Wall. U. S. R. 328, 341; and all the authorities herein cited, show that adjudications as to courts of a general jurisdiction, are not applicable to courts possessed of only a special and limited one.
As to the second ground of error assigned in the printed statement, so far as this exception relates to the defective order of the County court and the report of the commissioners, the adjudications above cited would seem to furnish a sufficient answer, even conceding the interpretation of that order claimed by the counsel for the appellant. On the strength of those authorities, it must be presumed, in the absence of all proof, that the real estate appraised and embraced in the report of the commissioners, was all the real estate of which William Devaughn died seized, and in which the widow was entitled to dower. It no where appears to have been otherwise. Till that is shown, the action of the County court must be held correct. In the exceptions filed in the court and which were overruled, there is not even a suggestion of there being other property, either within or beyond the limits of the county of Alexandria, of which the appellant was dowable. That there was none seems to have been admitted. It is certainly a fact, upon which the judgment of the court must have passed in appointing commissioners and confirming their report.
By the counsel for the appellant, in his statement it is further urged under.this head that the commissioners assigned the dower in reference to fee simple value, *and in entire disregard of the annual rental or productive value. That an. assignment of dower should be made in reference to the annual profits, no less than to the fee simple value, is a proposition well settled by repeated adjudications from the earliest times in this country and in England, and the rule has its foundation in the plainest principles of right and justice. The support of the widow in her station is the main purpose of the law, for which an income is requisite. Often the infant heirs need a like support. And the intent of the law manifestly is, that this division between the widow and heirs shall be based upon annual profits as well as value. It would be a dereliction in duty to act otherwise. How has this well settled and righteous principle of law application to the case at bar? Though alleged in the statement of the appellant’s counsel, it no where is shown or appears that the commissioners did disregard either the annual profits or the fee simple value in the assignment reported by them. In the exceptions to the report of the commissioners, filed by the appellant in the County court, this charge against the commissioners is not made or suggested, where, had it been made, the wrong, if done, could have been corrected. In the cases cited in his statement by the appellant’s counsel, it was agreed, or otherwise established, that the assignments of dower in those cases were made without reference to the annual profits, and were therefore unequal and oppressive on the widow or the heir. Here no such inequality is admitted or proved to exist; on the contrary, the reverse must be-presumed from the whole x'ecord and the judgment of the court.
The thix'd and last ground of error presented in. the printed statement is, that “the County court erred in not assigning to the widow the mansion house.’’ Unless injustice will thereby be done to the heirs, it is usual to assign to the widow the home or residence of *the deceased. In this practice, there is a manifest propriety, which commends itself to all. Why, in this case, the residence was not thus assigned to the appellant, does not appear. We are, however, authorized to conclude that there was a reason deemed by the commissioners and the court satisfactory.
While such is the general practice in assigning to the widow her dower rights, we find no law by which she can claim the mansion house in all cases as a right; nor any adjudication,, unless given by statute, annulling an assignment of dower, otherwise proper and equitable, for the failure alone to .give to the widow the mansion house of the deceased. The reason for assigning as dower the mansion house in a city, is believed to be less potent than in the country, where this practice had its origin. In Park on Dower, page 254, the law is believed to be accurately stated thus: “that the heir is not compellable to assign unto his mother in dower the capital messuage which was his father’s or any part thereof, although she be dowable of the same. But he may assign unto her other lands and tenements of which she is dowable, in allowance of the capital messuage. See also Tucker’s Commentaries, Book 2, chap. 6, page 64. In the case of Jiggets v. Jiggets, cited by the counsel of the appellant from the 40 Miss. R. 718, it is asserted that prima facie it is her legal right. But on examining that case, it is found merely .to determine the principle, that if the mansion house be thus set off to the widow, when no injustice is done the heirs, there is no error in thus giving it to her. Certainly this decision furnishes no authority for annulling and setting aside an assignment, otherwise just and equitable to the widow and the heirs.
But it would seem that the statute law of this State furnishes the law, and must determine our decision. After enacting in the first section of chapter 110 of the Code of 1860, “that the widow shall be endowed of one-third *of all the real estate, whereof her husband, or any other for his use, was, at any time during the coverture, seized of an estate of inheritance, it proceeds, in the eighth section of the same chapter, to further provide, that “until her dower is assigned, the widow shall be entitled to demand of the heirs or devisees one-third part of the issues and profits of the other real estate, which was *207 devised or descended to them, of which she is dowable; and in the meantime may hold, occupy and enjoy the mansion house and curtilage without charge.”
Note.—After the opinion in this case was delivered and filed, the attention of the court, in a subsequent case, was called to the opinion in manuscript of Judge Joynes, in Ballard et al. v. Thomas & Ammon, in which the jurisdiction of County courts is determined. Had that case been before us, that portion of the foregoing opinion relating to the powers of the County courts would have been less elaborately presented, being res adjudicata.
After dower is assigned to the wTidow, this statute seems clearly to exclude any right on her part to the exclusive use of the mansion house of her husband, unless the same be set off to her as a portion of her dower, and also all right on her part to have the same assigned to her as dower. Entertaining these views of the law applicable to this case, no error is found in the judgment of the District court, and the same must be affirmed with costs to the appellees.
Order affirmed.