# CHARLESTON

DENT *v.* PICKENS *et al.*

Submitted June 15, 1906.    Decided March 12, 1907.

1. APPELLATE PROCESS—*When Waived.*

   Where an appellee appears by two or more counsel, who file briefs on the merits of the cause, and by letter to the clerk, join in requesting a submission of the cause, service of appellate

process will be treated as waived, although one of the counsel in his brief may present the question of such want of service. (p. 490.)

2. DECREE— *When Not Final—Appeal, When Under Section 6, Chapter 134. Code.*

Where, in a suit against a devisee and others to have sold to pay liens a greater interest in land than was devised to him, co-devisees remotely interested therein by executory devise over in default, at his death, of living children or issue of such children, are made defendants solely for the purpose of having said will construed against their contingent interest in said land, and who appear and by their demurrer overruled challenge as matter of law the right of the plaintiff to any relief against them, and on default of answer by them final decree is pronounced that said devisee took by said devise such greater interest, and directing a sale thereof to pay said liens, such final decree is not a decree by default precluding such co-devisees from an appeal without motion in the circuit court to correct the error therein against them, provided by section 6, chapter 134, Code, such error being necessarily involved in the decree overruling their demurrer to the bill. (p. 492.)

3. WILL— *Construction—Defeasible Estate—Defined.*

A will making specific devises of lands to children and grandchildren of the testator, by the tenth item gave to his son D. P. a tract of 396 3-4 acres, charging it however with $2000. in favor of his personal estate; and, after making said specific devises, by the eleventh item provided: "All the lands hereinbefore devised to my said children and grandchildren, . . are to be taken and held by them subject to the following limitation—that is to say, that if any of said children or grandchildren hereinbefore mentioned shall die without children, or the lawful issue of such children, living at the time of his or her death, or born within ten months thereafter, then in that case the lands herein devised to such child or grandchild so dying without such children, or the lawful issue of such children, living at the time of his or her death, or born within ten months thereafter, shall descend to each of my surviving children and the lawful issue of my deceased children and grandchildren, the descendants of each of my deceased children and grandchildren taking the portion which my deceased child or grandchild would take if living at the time of such death." *Held*, that at the death of the testator the said D. P. took a defeasible estate in fee in said 396 3-4 acres, with an estate limited thereon, by executory devise, to the other persons described in said eleventh item of the will. (p. 497.)

4. SAME— *Words of Survivorship Defined.*

Words of survivorship contained in a will will be construed according to their usual and common acceptation, unless a different

meaning plainly appears to have been intended thereby; and will be referred to the event plainly intended to accomplish the purposes of the testator, whether that event be before, at the time of, or after the death of the testator. (p. 501.)

(POFFENBARGER, JUDGE, Absent.)

Appeal from Circuit Court, Barbour County.

Suit of Susan C. Dent against Dever Pickens *et al.* Decree for plaintiff, and John D. Pickens and May Pickens Davisson appeal.

*Reversed in Part. Remanded.*

HAYMOND MAXWELL and J. HOP WOODS, for appellee.

JOHN BASSEL, for appellants.

MILLER, JUDGE:

This case has been several times before this Court, upon appeals prosecuted by one or more of the parties from decrees of the circuit court. A clear understanding of the entire case may be obtained by referring to the published decisions of this Court on those appeals, beginning with 34 W. Va. 240. This is an appeal by John D. Pickens, a brother of Dever Pickens, and by May Pickens Davisson, his niece and a daughter of his deceased brother Alexander H. Pickens, co-devisees with others under the will of the late James Pickens, from the decree of the circuit court pronounced on the 23rd day of February, 1905. Other appeals from this decree have heretofore been disposed of as follows: The first by A. G. Dayton and others, decided March 13, 1906; the second by Susan C. Dent, the plaintiff, decided at the present term of court on the 26th day of January, 1907, and not officially reported. The present appellant John D. Pickens was a co-petitioner with A. G. Dayton and others in the first appeal from said decree; but as that appeal was limited by the order of this Court awarding it to certain specified matters assigned as errors in said decree, the present appellants were, by an order of this Court of March 6, 1906, as modified by a subsequent order of March 8, 1906, on their joint petition allowed an appeal from so much of said decree as adjudged that by said will an estate in fee simple indefeasible became vested in said Dever Pickens in the 396¾ acres devised to him, and adjudging the same to be

sold to pay the liens of plaintiff and others thereon. That portion of the decree of the circuit court referred to is as follows: "And the court proceeding further to pass upon and determine under said third amended bill the true estate of the defendant Dever Pickens, under the will of his father, James Pickens, deceased, in and to the 396¾ acres of land involved herein devised to him thereunder, is of opinion and doth adjudge, order and decree, that he the said defendant Dever Pickens, having survived the testator his said father and having lawful issue of two children, the infant defendants Coburn Pickens and Paul Pickens, still living, born of the marriage of said Dever Pickens and the defendant Minnie Coburn Pickens, has by reason thereof, and the true construction of said will, and the intention of the testator, said James Pickens, deceased, thereunder, an indefeasible estate in fee simple therein." This decree shows that the cause was heard upon the former pleadings and proceedings; upon a report of Geo. M. Kittle, commissioner in chancery, filed on the 18th day of May, 1903, with three exceptions endorsed thereon; and particularly upon the third amended bill of the plaintiff, filed at April rules, 1904, upon demurrer of the defendants thereto (overruled by the court), and upon the answers of some of said defendants (not including any answer by the present appellants so far as the record shows).

The point is made in the brief of counsel for the appellee that she is not before this Court upon any process issued or served upon her, or upon any appearance by her to this appeal, and that, to save her rights in respect thereto if necessary, she appears here only for the purpose of taking advantage thereof. What the necessity here suggested is we do not quite comprehend. If by this saving it is meant to save this point only in the event of a decision adverse to her, we do not think the point should prevail. Notwithstanding this point, counsel has proceeded to discuss the case on its merits, in quite an able and elaborate brief. We find, however, by reference to the papers in the cause in the clerk's office of this Court, that as a matter of fact no process regularly issued upon this appeal. We do find, however, that copies of the order allowing the appeal were mailed at their request to counsel in the case; and it seems to

have been understood between the clerk and counsel that no formal process was to issue. Aside from this, other counsel for the appellee appeared and filed a brief in the case in June, 1906, without suggestion of want of process; and there is a letter from him on file in the clerk's office as well as from counsel for the appellants, asking that the case be submitted to the Court upon the briefs filed. We think this is sufficient appearance of parties to amount to a waiver of process, and we so hold.

Counsel for the plaintiff, in one of the briefs filed, makes the point that the appellants, having failed to answer the third amended bill or to make any motion in the court below to correct the errors now complained of, have, by section 6, chapter 134, Code, no standing in this Court upon this appeal. The record will show that the original bill did not put in issue the quality of the estate of Dever Pickens in the 396¾ acres. In the first amended bill the plaintiff charged that his interest in said 396¾ acres under the will of his father was a *defeasible* estate, and that the same was wholly insufficient to pay the plaintiff's judgment. In the second amended bill the plaintiff re-affirmed *in extenso* all the material allegations of her original and first amended bills. The prayer of this second amended bill, among other things, was that his interest in the real estate therein mentioned might be ascertained and subjected to the plaintiff's judgment and execution. In the third or last amended bill the plaintiff has taken a different position with respect to the quality of said estate. After setting out the provisions of said will devising said land to said Dever Pickens and the limitations thereon, the plaintiff charges that the said Dever Pickens, having survived the testator and now having lawful issue living—namely, the defendants Coburn Pickens and Paul Pickens, born of his marriage with the defendant Minnie Coburn Pickens—has an absolute estate in fee simple in said land, and that his estate therein became such upon the death of his said testator; and the prayer of this bill, among other things, is that the said will in respect to such estate therein devised to him may be judicially construed and said estate determined. The answer which the appellants' counsel makes to this point in the brief of counsel for the appellee is,

that John D. Pickens and May Pickens Davisson, together with all the other devisees of James Pickens, having been made parties to the third amended bill for the express purpose of having the court adjudicate the question of the estate taken by Dever Pickens under the will, whether a conditional fee or indefeasible fee, and as they would all be bound by any decree rendered in the cause, and all defendants having entered their demurrer to the bill, it is perfectly indifferent whether they filed answers or not; because, as he claims, when the demurrer was overruled, which raised the same question presented here, that was an adjudication of the entire question as to the character of the estate vested in Dever Pickens, and was not a decree for want of appearance, and therefore it did not require a motion to reverse the decree before an appeal could be taken therefrom.

We are not referred by counsel for either of the parties to any authority upon this important question of practice. In the case of *Gates* v. *Cragg*, 11 W. Va. 300, this Court corrected an error made by the court below in a decree subsequent to the issuing of the rule on overruling defendant's demurrer, and in default of answer, without any previous motion being made in the court below to correct such error; but, as noted in the case of *Watson* v. *Wiggington*, 28 W. Va. 533, 554, this error was clearly independent of those resulting merely from giving effect to the order overruling the demurrer. The case of *Gates* v. *Cragg* seems not to have been called to the attention of the Court in *Steenrod* v. *Railroad Co.*, 25 W. Va. 133. In the latter case it was held that a demurrer is an affirmative admission of the allegations of the bill—itself a confession that, if the *facts* alleged in the bill entitle the plaintiff in law and equity to the relief prayed for, then such relief may be given, and, in order to avoid the effect of this admission, it is imperative that a plea or answer denying or avoiding those allegations be filed, before a decree on its merits is entertained, and that when in such cases the demurrer is overruled the bill stands in the court overruling it precisely as if no demurrer had been entered, and that a subsequent decree is necessarily on bill taken for confessed as it originally stood at rules, and an order entered before the demurrer was filed and over-

ruled. In *Watson* v. *Wiggington, supra,* JUDGE GREEN says, (page 551): "Further examination has satisfied us that the general principles announced in *Steenrod* v. *Railroad Co.* are correct, but that to avoid mistakes they should be to some extent modified; and as these principles thus settled conflict with the opinion I expressed in the case in 11 W. Va., I ought to have assigned my reasons for changing my views." And he says: "The controlling reason for the conclusions reached in the case of *Gates* v. *Cragg* was, that the spirit of the statute-law, which we are construing, was to require parties in the court below to seek to correct all errors occurring in an appealable decree, when such decree had been made without any defense on the part of the appellant, by making a motion to correct such errors before taking an appeal to this Court and incurring unnecessary expense. This was regarded as just and reasonable, inasmuch as the circuit courts were peculiarly liable to commit errors in entering such decree, they being very often the result of mere inadvertence. Such an error would often be without delay or expense corrected by the court below, if its attention was called to the error by a motion, before an appeal was allowed. This I still regard as the obvious purpose of our statute; and it was obviously so regarded by this Court, when this contrary decision was rendered in *Steenrod* v. *Railroad Co.* This distinctly appears from the opinion of the Court pronounced by JUDGE SNYDER; and it is abundantly shown by that portion of this opinion hereinbefore quoted. But in carrying out this plain object of our statute, this Court in the case of *Gates* v. *Cragg* (see pages 305-6) held that, if the defendant appeared and filed a demurrer, no decree could be rendered against him as on bill taken for confessed; and if the demurrer is overruled, the court must, as required by the statute, give a rule on the defendant to answer the bill; and if on the day specified in the rule he fails to appear and answer, the same decree must be entered against him as would, before the statute required this rule, have been immediately entered, when the demurrer was overruled; and such a decree made after the appearance of the defendant and the overruling of his demurrer was regarded as a decree not rendered upon a bill taken for confessed but as rendered after due consideration of the defendant's

objections; and it did not, we considered, come within the spirit of the statute requiring a motion in the court below to correct certain errors, before any application for an appeal could be made to the appellate court."

After further commenting upon *Steenrod* v. *Railroad Co.*, and discussing some authorities which hold that, although the principles of the cause may be settled by the overruling of the demurrer to the bill, an appeal therefrom can not be taken until after a decree has been entered carrying into effect these principles, JUDGE GREEN, says (page 554): "The truth is, this Court in *Gates* v. *Cragg* failed to note the distinction, which is well pointed out by this Court in the case of *Steenrod* v. *Railroad Co.*, between the cases where the errors complained of by the defendant in his appeal are errors necessarily resulting from the decree erroneously overruling the defendant's demurrer, and the cases where the errors complained of by the appellant, the defendant, include also other errors independent of those resulting from such order overruling the defendant's demurrer. There is to my mind after duly considering the subject a clear distinction between the two cases. In the one the only error complained of in the final decree is an error necessarily resulting from the court's correctly carrying into effect a previous interlocutory order settling the principles of a cause and erroneously overruling the defendant's demurrer to the bill; such final decree, though no answer had been filed, not being a decree on a bill taken for confessed, but really simply a decree on the previous interlocutory order. From such a final decree an appeal lies, though no previous motion has been made in the court below to correct the errors in it. In the other case the appellant complains not only of the error committed in such interlocutory order, but also of errors in the subsequent final decree, which errors are independent of those resulting merely from giving effect to an erroneous order overruling a demurrer to a bill. Such a final decree as this is, where no answer has been filed, a decree on a bill taken for confessed, and therefore a decree, which can not be appealed from, till after a motion has been made in the court below to correct such errors." Referring to the first point of the syllabus of this case for a more succinct statement of the conclusion of JUDGE GREEN under the facts

stated in the first position, he says:    "If he then appealed from such decree solely on the ground that the court could properly render no decree against him on the plaintiff's bill, this Court could entertain such an appeal, it being regarded substantially as an appeal from a previous decree overruling a demurrer, which after this decree against him was an appealable decree if it settled the principles of the cause."

Measured by these rules, what is the position of the appellants here? Does the error in the final decree complained of necessarily arise from the error in the decree overruling defendants' demurrer? If so, under these authorities the appeal lies without motion first made in the court below to correct the error; otherwise not. The question is a close one; but when we consider the facts in this case in connection with the pleadings, we think that the case is within the rule authorizing appeals without previous motion to correct the error under section 6, chapter 134, Code. It will be observed that the appellants are in nowise interested in this litigation, except in so far as it is the purpose, in construing the will of James Pickens, to estop them from hereafter asserting, as against the plaintiff and the prospective purchaser of the land devised to Dever Pickens by the will of his father, a different construction thereof. If, as the second amended bill of the plaintiff charged, Dever Pickens took by this will a defeasible estate, and not an estate in fee simple indefeasible as charged in the third amended bill, these appellants would have no interest in the subjects of controversy. These appellants were not parties to the original suit, nor to the first and second amended bills. They were brought in on the third amended bill, for the one purpose of having determined the estate of Dever Pickens in the tract of land to be sold. This last bill pleaded the terms and provisions of the will relating to the devise to Dever Pickens, with the limiting clause thereof, which will be hereafter more particularly referred to; and the bill then undertook, by way of conclusion from the facts pleaded in relation to said will, to charge, contrary to the allegations of the second amended bill, that Dever Pickens took by said will a fee simple estate indefeasible. This question rested substantially upon the provisions of the

will itself. An answer to this bill by these appellants would have been nothing other than an admission of the facts charged with respect to the provisions of the will. It could have denied the conclusions of law charged; but these objects were accomplished by the demurrer. The demurrer admitted the facts, but denied the conclusions of law. It said that, admitting the facts, the conclusions of law charged did not follow. All the rights of these appellants therefore were involved in the demurrer to the bill; and if the subsequent decree of the court which is appealed from amounted to no more, so far as the appellants are concerned, than the carrying into effect of the error of the court in overruling their demurrer, they are entitled to this appeal without first having made a motion to correct the error in the court below. A decision upon the demurrer by the court below that Dever Pickens did not take by the will of his father a fee simple estate indefeasible in said land would have denied the right of the plaintiff to any relief as against these appellants, and would have dismissed the bill as against them. We think, therefore, that the position of the appellants is fairly within the rule of *Watson* v. *Wigginigton, supra,* and that this Court has jurisdiction of their appeal without previous motion to correct the error complained of in the court below.

The only other question presented upon this appeal is: What estate in the tract of 396¾ acres of land proceeded against did Dever Pickens take by the will of his father, James Pickens? The appeal which was allowed upon the petition of the appellants confined the same to this sole and single question. The question is a legal one, presented by the testamentary document itself—coupled of course with the date of the death of the testator, the subjects and objects of his bounty, as presented by the record.

James Pickens died testate January 22, 1887. His will was dated December 8, 1884, and was probated in the clerk's office of the county court of Barbour county March 1, 1887, He left a widow, Ann Mariah Pickens, to whom he devised his household and kitchen furniture and the sum of $5000 in money, in full satisfaction of her distributive share of his personal estate, and provided that she was to retain dower

in all his real estate, and that his several other devisees should take and hold the lands devised to them respectively subject to her dower right therein to the same extent as if he. had died intestate in reference thereto.   He declared in the second item thereof:   "It is my purpose and intention in this my will that all my children now living and the two children of my deceased son, Alexander H. Pickens, shall all share equally in the final distribution of my real and personal estate.   The children of my said son, Alexander H. Pickens, or their lawful issue, and the children or lawful issue of any other of my children taking *per stirpes* the portion or portions which my deceased child or children would have taken if living."

In the third item he says:   "Having heretofore given and advanced to my son, John D. Pickens, the sum of six thousand dollars, for which I hold his receipt, and also the sum of thirty eight hundred and fifty eight dollars and sixty. four cents, being the balance due to me from him on his obligation for four thousand one hundred and twelve dollars, dated the 20th day of September, 1878, I hereby release him from all liability to me for the sum of $6000 and $3858.64, and in addition thereto I devise to him all that certain tract of land conveyed to me by Simon White, containing 73 and 3-4 acres, which I charge and estimate to him at the price of twenty five hundred and fifty-five dollars, making in all the sum of $12,413.64."

In the fourth item he charges his daughter, Rachel Margaret Pickens, the wife of Nathan D. Boring, with the sum of $6000 in money and $6000 in land, with which "she shall be charged in the final settlement of my estate," aggregating the sum of $12,000.   He then proceeds by the fifth, sixth, seventh, eighth, ninth and tenth items to make specific devises of lands: to his grandchildren May Pickens and Albert Pickens, the children of his deceased son Alexander H. Pickens, 295 acres; to his daughter Jennie Pickens, 238 acres; to his daughter Mollie Pickens, 284 1-2 acres; to his daughter Emma Pickens, wife of Samuel Walker, four several tracts, and finally by the tenth item, to his said son Dever Pickens the 396 3-4 acres involved in this suit.   Item 10 of said will, omitting the descriptive boundaries, is as follows: "To my son, Dever Pickens, I devise one tract of land con-

taining 360 acres and another tract of land adjoining the same containing 36 and 3-4 acres, containing together 396 and 3-4 acres, which I estimate and value to him at the price of sixteen thousand dollars, of which he is required to pay to my executors the sum of two thousand dollars, which I declare to be a lien and charge on said land, in three equal installments, payable in one, two and three years after my death, which constitute a part of my personal estate."

He then proceeds by the eleventh item to impose a limitation upon the estates thus devised, as follows: "All of the lands hereinbefore devised to my said children and to my said grandchildren, May Pickens and Albert Pickens, except the tract of 73 and 3-4 acres of land hereinbefore devised to my son, John D. Pickens, are to be taken and held by them subject to the following limitation—that is to say, that if any of my said children or grandchildren hereinbefore mentioned shall die without children, or the lawful issue of such children, living at the time of his or her death, or born within ten months thereafter, then in that case the land herein devised to each child or grandchild so dying without such children, or the lawful issue of such children, living at the time of his or her death, or born within ten months thereafter, shall descend to each of my surviving children, and to the lawful issue of my deceased children and grandchildren, the descendants of each of my deceased children and grandchildren taking the portion which my deceased child or grandchild would have taken if living at the time of such death."

As bearing upon the proper construction to be given to this will, the twelfth, thirteenth and fourteenth items are pertinent; they are as follows: "Item Twelfth: After the payment of all my debts and funeral expenses, including the costs of suitable monuments to mark the graves of myself and my said wife, and the charges of administration of my said estate and after the payment of the legacy of five thousand dollars and of the delivery of the property hereinbefore specifically bequeathed to my wife, Ann Mariah Pickens, I direct my executors hereinafter named out of the residue of my personal estate to pay to my said children and grandchildren such sums of money as with the value of the lands

and money hereinbefore devised or advanced to them or any of them, with the price hereinbefore affixed to each devise, as will make the share of each of the value of fourteen thousand dollars—that is to say, to John D. Pickens, fifteen hundred and eighty-six dollars and thirty-six cents; to Rachel Margaret Boring, two thousand dollars; to Charity Young, thirty-nine hundred dollars; to May Pickens, nineteen hundred dollars; to Albert Pickens, nineteen hundred dollars; to Jennie Pickens, forty-five hundred dollars; to Mollie Pickens, five thousand dollars; and to Emma Walker six hundred dollars; but in case my personal estate prove insufficient for the payment in full of the last named eight legacies, then I direct my executors to abate the deficiency from each of said legacies ratably.   And in case either of my said grandchildren, May Pickens or Albert Pickens, shall die before attaining the age of twenty-one years, unmarried and without lawful issue living at the time of his or her death, or born within ten months thereafter, then the legacy bequeathed to such grandchild and the interest of such grandchild in the residue of my estate so dying shall be paid to the survivor of them; but in case both of said grandchildren shall so die before attaining the age of twenty-one years and without lawful issue living at the time of such death, or born within ten months thereafter, then the interest of both of said grandchildren in my estate, including both of the legacies to them, and in the interest of each in the residue of my estate, shall fall into and become a part of the residue of my estate and be disposed of as hereinafter provided; and in case my said wife, Ann Mariah Pickens, shall die during my lifetime, then in that case the legacy of five thousand dollars and the personal property specifically bequeathed to her shall also fall into and become a part of the residue of my estate.   Thirteenth Item:   All moneys that I may hereinafter advance to my said children or grandchildren shall be applied in liquidation of the several legacies hereinbefore bequeathed to them respectively.   Item Fourteenth:   All the rest and residue of my estate of every kind and character shall be equally divided between my said children, John D. Pickens, Rachel Margaret Boring, Charity Young, Jennie Pickens, Mollie Pickens, Emma Walker and Dever Pickens, May Pickens and Albert Pickens, the last two taking together an equal share with each of my surviving children."

The present position of the plaintiff is that this will gives to Dever Pickens an indefeasible fee simple estate in the 396¾ acres of land devised to him. On the other hand it is contended by the appellants, as originally charged by the plaintiff in the second amended bill, that the will vested in Dever Pickens an estate in fee simple limited thereon by executory devise upon his dying without children, or the lawful issue of such children, living at the time of his death, or born within ten months thereafter, to his surviving brothers and sisters, the descendants of such deceased brother or sister to take such portion as such brother or sister would have taken if living at the time of such death.

The proper construction of this will, and the solving of the issue thus presented, depend upon the time to which, by the provisions of the will and the rules of law applicable thereto, the words of survivorship in the will shall be referred—whether to the date of the death of the testator, or the date of the death of the first devisee before or after the death of the devisor. The decree of the court below seems to have been based, in part at least, upon the fact that there were born to Dever Pickens after the death of the testator two children, who are still living, an event happening after the death of the testator. It is argued by counsel for the appellee, as a general rule of construction, that whenever there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first named devisee during the lifetime of the testator, and if such devisee survive the testator he takes an absolute fee; that the words do not create a remainder over to take effect on the death of the devisee at any time, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the testator's death. It is further contended by them that this construction is uniformly adopted, unless there is some language in the will indicative of a different intention on the part of the testator. We are referred by counsel for this rule to *In re N. Y. L. & W. Ry. Co.*, 105 N. Y. 89, opinion by Rapallo, Judge, and to two Virginia cases as binding upon us—namely, *Hansford v. Elliott*, 9 Leigh 78, and *Martin v. Kirby*, 11 Grat. 67. In the case of *Martin v. Kirby*, cited, Judge Lee says: "What-

ever may be the rule of the English courts, this court would seem to adopt the rule that the words of survivorship refer to the death of the testator. This is declared to be, in cases in which no special intent to the contrary is manifested, the safest and soundest construction and more consonant to the intention of the testator and best supported in the authorities." We are cited to the later cases of *Stone* v. *Lewis*, 84 Va. 474; *Sellers* v. *Reed*, 88 Va. 377; *Gish* v. *Moomaw*, 89 Va. 345; *Chapman* v. *Chapman*, 90 Va. 409; *Crews* v. *Hatcher*, 91 Va. 378; and *Stanley* v. *Stanley*, 92 Va. 534.

It would serve no good purpose to refer by way of criticism to these Virginia cases, but it may be confidently asserted that their authority has been very much shaken by the later case of *Cheatham* v. *Gower*, 94 Va. 386. One judge, Keith, President, dissented. The provision of the will involved in that case was: "I give to my nephew, T. M. Cheatham, during his life my mansion house, and at his death to his surviving children. My money and bonds I wish to be equally divided between L. L. Lester's and T. M. Cheatham's children. All the balance of my estate, both real and personal, I wish to be equally divided between T. M. Cheatham's and L. L. Lester's children." And it was held that the remainder, after the termination of the life estate created by the first clause, passed to the children of T. M. Cheatham at his death, whether being in the testator's lifetime or not, but the estates given by the other two clauses of the will passed to the children of Lester and Cheatham living at the death of the testator. The court, discussing the case, referring to the other Virginia cases cited by counsel, said: "In the case at bar the word 'surviving' is not used by the testatrix except in the first clause of her will, and had she intended that only the children of T. M. Cheatham who were living at her death should take under that clause, it would seem reasonable to suppose that she would have used such words as would show beyond question what she meant, and not such as she does use, which by their common and ordinary meaning, in the sense in which they would be understood by persons of common understanding, mean that only such children of T. M. Cheatham as might be living at his death were to take an interest in the property." It will appear from an inspection of these Virginia authori-

ties down to the case of *Cheatham* v. *Gower*, that the court in Virginia has followed the earlier English decisions on this subject and has adhered to them tenaciously, and did not until the *Cheatham Case* modify the rule of the prior cases in accordance with the later English decisions. For a history of the earlier English cases, and the later cases modifying the rule of the earlier ones, reference is made to 2 Jarman on Wills (6th Ed.) 661 *et seq.* Referring to the later English cases of *Brograve* v. *Winder*, *Newton* v. *Ayscough*, *Hoghton* v. *Whitgreave* and *Daniell* v. *Daniell*, which depart from the rule of the earlier cases, Mr. Jarman says (page 671): "The general rule referring survivorship to the death of the testator was, it will be observed, departed from in the preceding cases only upon particular grounds, and these cases, by resting the construction on the special circumstances, might seem indirectly to afford a confirmation of that rule. Their effect, however, in consequence of the indefinite and questionable nature of the exceptions which they went to establish, evidently was to strike at the root of the rule itself, and to prepare the way for its abandonment in cases where such circumstances did not exist." And he adds: "It is curious to observe, in the history of this rule of construction, the steps by which an established doctrine is overturned." There is an earlier Virginia case of *Burfoot* v. *Burfoot*, 2 Leigh 119, one of the cases cited by counsel for the appellants in support of his views. As we understand them, it is conceded by the appellants that this case is contrary to the Virginia decisions relied upon by them.

Inasmuch as the Virginia court in *Cheatham* v. *Gower*, *supra*, did not feel itself bound by the prior decisions of *Hansford* v. *Elliott* and *Martin* v. *Kirby*, neither do we feel bound thereby to adhere to the ancient rule, which is now opposed to the weight of authority; and in *Schaeffer* v. *Schaeffer*, 54 W. Va. 681, though the point is there only mooted, yet JUDGE BRANNON, who anticipated the adoption by us of the better and more modern rule of construction, referring to the rule of *Martin* v. *Kirby*, says: "Speaking for myself, I am at present ready to say that the rule is not sound. Once it was, but not now. Numerous English decisions once upheld it." And referring to the discussion by Mr. Jarman, star page 1547, JUDGE BRANNON quotes this

author as follows: "In this state of the authorities one need scarcely hesitate to affirm that the rule that reads a gift to survivors simply as applying to objects living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and that where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only." He then cites numerous American authorities recognizing this change in the rule. In *Schaeffer* v. *Schaeffer*, at page 685, JUDGE BRANNON, quoting from the same author, says in reference to the term "substitution" used by Rapallo, Judge, in 105 N. Y., *supra*: "The term substitution is generally applied to limitation intended to provide for the death of prior devisees or legatees before the period of distribution."

*Summers* v. *Smith*, 21 N. E. 191, and *Smith* v. *Kimball*, 38 N. E. 1029, Illinois cases, and *Britton* v. *Thornton*, 112 U. S. 526, are leading cases and all in accord with the modern rule of construction. *Smith* v. *Kimball* was upon a bill for specific performance of a contract for the sale of real estate. The first point of the syllabus is: "A testator devised land to his daughter, in language that carried the fee, and then declared: 'Should the said daughter die leaving no heirs, I will and direct that all of the above described property shall be equally divided between my sisters.' *Held*, that the devise to the sisters was a valid executory devise, dependent upon the daughter dying without issue surviving her." Commenting on the New York and Pennsylvania cases cited contrary, the Illinois court says: "They are not applicable here, for the reasons involved in the observations already made. When the death of the first taker is coupled with other circumstances, which may or may not ever take place—as, for instance, death under age or without children —the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, 'upon death,' under the circumstances indicated, at any time, whether before or after the death of the testator."

In *Britton* v. *Thornton, supra.*, the will of Joseph Thornton provided: "To Eliza Ann Thornton, natural daughter of my said son Nelson, I give and devise all that plantation

bought of Andrew Porter and John Davis," and after describing it provided: "Should the said Eliza Ann die in her minority, and without lawful issue then living, the land hereby devised shall revert and become a part of the residue of my estate hereinafter disposed of." "The question which lies at the foundation of this case," says Justice Gray, "is what estate Eliza Ann Thornton took in the land which Joseph Thornton specifically devised to her," and he answers it by saying: "By this specific devise, Eliza Ann Thornton took an estate in fee, defeasible by an executory devise over." And Justice Gray further observes: "When indeed a devise is made to one person in fee; and 'in case of his death' to another in fee, the absurdity of speaking of the one event, which is sure to occur to all living, as uncertain and contingent, has led the courts to interpret the devise over as referring only to death in the testator's lifetime * * * But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator."

It seems unnecessary to further burden this opinion, already too long, by referring to or discussing other authorities. The difference between the old and the modern rule of construction which we adopt is the difference between giving the words of the testator a technical meaning not intended by him, in order to aid the earliest possible investment of the estate devised, and construing the words of the testator according to their ordinary and common acceptation to accomplish the purposes of the testator. The old rule was not founded upon proper principles, and, as Jarman says with reference to the growth of the new doctrine, as quoted by JUDGE BRANNON in *Schaeffer* v. *Schaeffer* at page 683: "The sequel will serve to show that no rule of construction, however sanctioned by repeated adoption, is secure of permanence, unless founded in principle."

It only remains to apply the proper rule of construction to the will of the testator involved in this case. Holding this document up by its four corners, and reading therefrom the

mind of the testator, it is clear that when he made his will he anticipated that his living children and the children of his deceased son would all be living at the time of his death; and, as far as he could, after providing for his widow a competency in cash and for her dower in all his lands, he endeavored to make an equal division of his property between his children and grandchildren with estates therein, using the language of the limiting clause of the will, "to be taken and held by them subject to the following limitation," etc.; and that limitation was that after they should thus come into possession of the estates devised to them, if any of them should die without children, or the lawful issue of such children, living at the time of his or her death, or born within ten months thereafter, then the lands therein devised to those so dying without such children, or the lawful issue of such children, living at the time of his or her death, or born within ten months thereafter, whether such event should happen before or after the death of the testator, should descend to each of the survivors of them and to their lawful issue, the descendants of each of them taking the portion which their deceased ancestor would have taken if living at the time of such death—meaning of course the death of the first taker. This language was written in this will, as the record shows, by a careful and pains-taking lawyer, at one time a distinguished judge of this Court; and it can have no other meaning than to refer the words of survivorship contained therein to the time of the death of the several primary devisees, whether that event should take place before or after the death of the testator.

Several reasons, attempted to be drawn from the provisions of the will, are assigned by counsel for appellee against the construction we place upon this will. First, it is claimed that by the second item the testator has evinced an intention that all of his children and his two grandchildren should share equally in the final distribution of his real and personal estate. The expression is "children now living," etc., referring to his children and grandchildren living at the date of the will; but if the death of any of these children and grandchildren had occurred prior to the death of the testator, the literal fulfillment of this expressed wish of the testator could not have taken place. But if it be said that the last

clause of this item anticipates such death of his children before the death of the testator, by providing that said children or the lawful issue of any other of his children should take *per stirpes* the portions which his deceased child or children would take if living, and thereby refers the words of survivorship to a time anterior to the death of the testator, we do not think this item of the will, taken with the other provisions thereof, are sufficient to indicate an intention on the part of the testator that the words of survivorship used in the eleventh item of the will, the limiting clause thereof, are to be so referred; for clearly this item, as before explained, refers the period of survivorship to the death of the immediate devisees who would be in a position to take and hold the land devised, at the death of the testator, subject to the contingency of such child or grandchild dying without children or lawful issue of such children living at the time of his or her death, or born within ten months thereafter.

Second, it is claimed that the provision in the devise of of the 396¾ acres charging said land with a lien in favor of the testator's estate for the sum of $2000 was an inequitable provision, inconsistent with the testator's expressed desire that his estate should be divided equally between his children and grandchildren; for, it is argued, if Dever Pickens took only a life estate in the 396¾ acres, or took an estate in fee defeasible by an executory devise over, as claimed by the appellants, it is possible that he might have enjoyed the use of the devise for a day only. The answer to this is, that the testator did not anticipate such a contingency. He was looking forward to the enjoyment by his children of the lands and property respectively devised to them for the usual term or expectancy of life, and in the division of his lands this seemed to him to be the only way of equalizing Dever Pickens with his other children, so that they might remain in enjoyment during their several lives of equal portions of his estate, subject to the contingency of the eleventh clause of the will.

Third, another argument is drawn, on the theory of inequality, against our construction of this will—that the testator in the first clause of the will bequeathed a large bequest of $5000 to his wife, and by the eleventh clause thereof provided that in case she should die during the testator's life-

time then the legacy of $5000 and the personal property specifically bequeathed to her should fall into and become a part of the residue of his estate, and it is said that if this provision is read in connection with this second clause it is impossible to conclude that the testator meant that there should be at any time such a distribution of his estate as would give one child an interest greater than the others or greater than the interest devised to the two grandchildren. In other words, as we understand the argument, the postponement of the distribution of the residue of his estate and of this $5000 bequest to the wife of the testator after his death would work an inequality upon the other children not anticipated by the testator. The same argument might be made with reference to the provision in the twelfth item providing that in case both the grandchildren should die before attaining the age of twenty-one years, unmarried and without lawful issue at the time of his or her death, or born within ten months thereafter, the interest of both, including both legacies to them, and the interest of each in the residue of such estate should fall into and become a part of the residue of the estate of the testator, to be disposed of as therein provided. Here is a special provision of the will plainly postponing the division of the residue, under the conditions named, to a time which may happen long subsequent to the death of the testator. We see nothing in these arguments against our construction of the will. It seems to be written in plain terms, with little room for contrariety of opinion in relation thereto.

We hold that by the terms of the will of said James Pickens the defendant Dever Pickens took and holds thereunder an estate in fee in said tract of 396¾ acres, defeasible by an executory devise over upon his dying without children, or the lawful issue of such children, living at the time of his death, or born within ten months thereafter, to his surviving brothers and sisters and the lawful issue of such deceased brothers and sisters, the descendants of such brothers and sisters to take such portion as such brother or sister would have taken if living at the time of such death. We are therefore of opinion that there is error in the decree of the circuit court, in adjudging that the said Dever Pickens by the devise to him of said tract of land took thereunder an inde-

feasible estate in fee simple therein, and decreeing such interest therein to be sold in satisfaction of the lien decreed thereon.

We therefore reverse the said decree in this respect, with costs to the appellants; and this case is remanded to the circuit court, with directions to modify its decree aforesaid in accordance with the opinion of this Court, and to be therein further proceeded with according to the principles herein enunciated and the rules of equity.

*Reversed in part.     Remanded.*