# CHARLESTON.

## SCHAEFFER *v.* SCHAEFFER.

Submitted September 8, 1903—Decided December 16, 1903.

1. SURVIVORSHIP.
   Does survivorship in a will relate to the death of a testator or of the death of tenant for life or other point of time? (p. 683).

2. THE WORD "OR" IN A WILL.
   A will gives testor's widow a life estate, with power to sell some realty and consume its proceeds, and then says, "at the death of my wife what real estate and personal property may be left shall be sold, and divided equally among my children, or their children, or their representatives."
   Testator's children took no absolute or vested estate during the life tenancy, and such estate could vest only in those living at its close, and a deed of trust for debt given by a child dying before the life tenant has no effect upon testator's property against children of such child. • (p. 684).

Appeal from Circuit Court, Jefferson County.

Bill by William Schaeffer's Administrator against Emanuel

Schaeffer's Administrator. Decree for plaintiff and defendant appeals.

*Reversed.*

D. B. LUCAS and J. M. MASON, for appellant.

D. C. WESTENHAVER JOSEPH TRAPNELL and FORREST W. BROWN, for appellee.

BRANNON, JUDGE:

William Schaeffer made a will by which he gave to his wife for life, all his real and personal property, with power to sell some and use its proceeds, and then provided that "at the death of my wife what real and personal property may be left shall be sold and divided equally among my children, or their children, or their representatives." The testator died leaving his widow. Two of his sons, John W. and Emanuel, gave deeds of trust to secure debts on their interest in their father's estate, and then died during the life time of said widow. One of the said sons left a daughter, Deborah Merchant, and the other left children one named Cora Merrit. The administrator with the will annexed of the testator having sold the land filed a bill to construe the will and give him directions how to dispose of the fund, there being conflicting claimants, the creditors of the dead sons claiming under said deeds of trust payment of their debts out of the fund, on the theory that the sons who made said trust deeds had vested estate in the land, while their children denied that their fathers had any estate for the deeds of trust to operate upon. A decree was pronounced holding that the sons took a vested estate at their father's death, and that the deeds of trust were effective, and directing their satisfaction out of the fund.

Had the two sons a vested property in the estate of their father, so that the deeds of trust given by them would be good against their children? Did the will vest those sons with an estate at their father's death, or had they only a contingent remainder after their mother's life estate, to become vested only in case they should survive her? Counsel for the trust creditors say that the words "or their children" are words of survivorship and that they show that the testator had in contemplation that some of his children might die, and that the question is

the time of such death; in other words, did he think of such death occurring before his own death or afterwards.

They say that he contemplated it as occurring before his own death, and that he used those words to prevent a lapse of the legacies by their death in his life time. Viewing it as a question of survivorship they make the burden of their argument and seek to control the case by the principle found in *Kirby* v. *Martin*, 11 Grat. 67, that "in a devise or bequest to survivors at the death of a devisee or legatee for life, in the absence of the expression of a particular intent on the part of the testator, the survivorship has relation to the death of the testator." Counsel say that estate absolute vested in the sons at the testator's death. It is not demanded in this case that we say whether or not that principle is sound; for if we treat the case as one of survivorship, even under that rule we can say that the survivorship does not relate to the death of the testator, but to that of the life tenant, because that rule says its application depends upon whether the will manifests another intent, as the will in hand does.

However, speaking for myself, I am at present ready to say that the rule is not sound. Once it was, but not now. Numerous English decisions once upheld it. Jarman on Wills, p. * 1538, (6 ed. 667), after giving numerous cases stating that rule says: "The sequel will serve to show that no rule of construction, however sanctioned by repeated adoption, is secure of permanence, unless founded in principle", and states that the rule is not based on reason, and that "the reader, on a perusal of later cases, will find himself probably impelled to the conclusion where there is a gift of personal estate to a person for life or any unlimited interest, and after the determination of such interest to certain persons *nominatim,* or to a class of persons as tenants in common, *and the survivors of them,* these words are construed as intended to carry the subject of gift *to the objects who are living at the period of distribution."* On star page 1547 Jarman says, after a review of many cases: "In this state of the authorities one need scarcely hesitate to affirm that the rule that reads a gift to survivors simply as applying to objects living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and that where such gift is preceded by a life or other prior interest, it takes effect in favor of those who sur-

vive the period of distribution, and of those only." American cases recognize this change. *Branson* v. *Hill,* 31 Md. 181; *Wren* v. *Hynes,* 2 Metc. 129. Several Virginia decisions support *Martin* v. *Kirby.    Stone* v. *Lewis,* 84 Va. 474; *Gish* v. *Mooman,* 89 Va. 345; *Chapman* v.    *Chapman,* 90 Va. 409; *Crews* v. *Hatcher,* 91 Va. 378.    But the latest, *Cheatham* v. *Gower,* 94 Va. 383, does not.    In it a will gave "my nephew, T. M. C., during life, my mansion house * * * and at his death to his surviving children."    *Held,* that the remainder after the life estate passed to the children of T. M. C. living at his death, whether living at testator's death or not.    Likely *Jameson* v. *Jameson,* 86 Va. 51 is against it.    More does the rule apply as to personalty, to be realized by a sale of land, as in this case, after the testator's death, and then divided.    "Here the property to be distributed is not in a condition to be divided as directed by the testator until the death of a life tenant, and hence only those who survive him can take."    1 Underhill on Wills, section 350.

But be the case of a plain case of survivorship as it may, I think this is a case of substitution, not survivorship.    We have not the case of a survivor of several persons alike in interest, but a case where some persons are substituted in default or place of others.

Take the will.    What was the testator's intent?    That at the death of the widow life tenant the property should go to the testator's children, if then living, and if not, then to their children.    If he intended to give unconditionally and at once to his children a vested estate, why not simply give to them?    He did not do so.    He used more words than those necessary to do this. He says "my children *or* their children".    He meant something by these additional words.    What did he mean by these added words "or their children"?    He did not mean *"and"* their children.    We cannot change *"or"* into *"and"*; for this is only done to execute plain intent; but in this case that is obviously not the case.    We must give "or" its natural, usual gramatical effect, a disjunctive effect.    The testator did not mean to give his executor arbitrary power to choose either his own children, or their children.    He plainly meant to give to his own children, if living at date of distribution after death of his widow, and if not, then to their children.    Do we risk any thing in saying

that such was the purpose? Let us see if authority will not so interpret that little word "or." "The term (substitution) is generally applied to limitation intended to provide for the death of prior devisees or legatees before the period of distribution. Thus, a direct gift to A *or* his children goes to A, if he survive the testator, and to his children, if he does not. If the gift be preceded by a life estate, the substitutional gift takes effect whether A dies in the life-time of the testator or the tenant for life." 29 Am. & Eng. Ency. L. (1st ed.) 494. A will gave a wife a life estate, and directed a sale after her death, and gave fixed legacies to two grandchildren, and the balance to go to his six children "or their heirs." It was held that the word "or" interposed between the first legatee and the heirs was a word of substitution, and that the only persons entitled to share were those children living at the distribution and the children of dead ones. The word "or" was held to be equivalent to "in case of the death of." It is stated there that where a legacy is not palpable at once on the death of the testator, but an intermediate life estate is given and the testator provides that in case of a death of a legatee, it is to be given to some one else, then the words "in case of the death of" mean "in the lifetime of the tenant for life—that is before the money becomes payable." It was said to create an alternative devise. The court said: "The vesting of the estate in interest, as well as in possession, in the children of the testator, depended on their surviving the day of distribution." As a daughter died before the end of the life estate, her conveyance was held to pass nothing. *Eby* v. *Adams,* 135 Ill. 80. In *Rob* v. *Belt,* 12 B. Mon. 643, a devise was to a widow during widowhood, and on her marriage or death the estate to be divided among "my eight children or their heirs." It was contended that on the death of the testator the eight children took a vested interest in remainder, the possession only being postponed until the marriage or death of the widow. It was held that a proper construction of the will required the division to be made between the testator's children living at the marriage or death of the widow, and the heirs of those dead; that it was an alternative or substutional devise; that the words "or their heirs" must be taken as a designation of persons to take, or words of purchase, and were equivalent to "or such descendants of any that may

be dead or may be their heirs", referring to the time of division. It was said, as I have above said: "But as the testator does not say 'among my living children', but 'among my eight children,' *or* is proper to show, and does show, as to some there is an alternative devise in case of death before the time referred to, and in that event the heirs of the deceased take in place of the deceased." It was held that "no absolute and indefeasible interest vested in any of the children until the death or marriage of the widow." In *Wren* v. *Hynes*, 2 Metc. 129, was a devise that when the testator's youngest child should come of age a fund should be "diveded among the surviving children or their heirs", and it was held that survivorship referred to the date of distribution, not to testator's death, and the words "or their heirs" were words of purchase, and not limitation. "A daughter of the testator, who survived him, having died without issue prior to the period of distribution, her husband is not entitled to an interest in the estate." This was because she had no vested estate. 1 Redfield on Wills 486, states the same meaning for the word "or" so used. Jarman on Wills page * 482, cites *Girdlestone* v. *Doe,* 2 Sim. 225, as English authority to show that where a legacy was given to A for life, then to B "or his heirs", "B did not take the absolute interest, but that the latter words created a substitutional gift for his next of kin in the event of B dying in the lifetime of A." "Where, however, the word 'or' is applied to a bequest which may not take effect in possession on the testator's death, another point presents itself to-wit, whether the word 'or' (construing it to be introductory to a substituted gift) is meant to provide against the contingency of the first named legatee dying in the testator's lifetime, or the contingency of his dying in the interval between the death of the testator and the vesting in possession." "And here it may be stated that those cases in which the word 'or' has been construed as introductory to a substitutional bequest (in which sense it seems tantamount to the words 'in case of death') present a distinction between immediate and future gifts similar to that which has been just pointed out. Thus a legacy to A or his children, or to A or his heirs, is construed as letting in the children or next of kin in event of A dying in the lifetime of the testator; while, on the other hand, a bequest to A for life, and after his decease to B or his

children, is held to create a substitutional gift 'in favor of the
children of B in the event of B dying in the lifetime of A."
Jarman on Wills, pages * 482 and * 1570. Legacy to T "or
his heirs." *Held,* that the legacy to T was not an absolute one,
but that in the event which had happened—T's death before the
tenant for life—his heirs took directly under the will as sub-
stitutes for him." *Heyward* v. *Heyward,* 7 Rich. (S. C.) Eq.
289. Note, that the children of the two dead sons of Schaeffer
took, not by descent from their father, but from their grand-
father as purchasers under his will. 1 Underhill on Wills, sec-
tion 353. Having given authorities from abroad, and many
more could be given, I now refer to *Toothman* v. *Barrett,* 14
W. Va. 301, as decisive. A will gave a daughter a life estate
in land, and gave all his land after her death to "J. B. or his
heirs", and in case of his death then the land to be sold and
proceeds divided as in the will stated. The Court held that the .
force of the word "or" was to give their father but a contingent
remainder. See *Ewing* v. *Winter,* 34 W. Va. 23.

I will add that even under the rule put in *Kirby* v. *Martin,*
11 Grat. 67, the dead sons took only a contingent remainder,
they dying before the life tenant, because that case applies to
survivorship to the date of testator's death, "in the absence of
the expression of a particular intent on the part of the testa-
tor", and in this case the words "or their children" show an
intent to vest estate in the sons, if living at the death of the
life tenant. I think I have cited enough law to show that the
force of "or their children" is equivalent to "in case of their
death"; that they provide those who take in place of the
first legatee; that they make a condition on which the
vesting of any estate depends; that they have the effect to
give only a contingent remainder to Schaeffer's children, pre-
venting any estate in them at the testator's death.

I consider it a case of contingent remainder, but others might
say that it is a case of an estate vesting in right, but not in
possession, at the testator's death, defeasible by the death of
any of his children during the life tenancy. It seems immate-
rial, except in technical law, as the same result is reached. In
*Reiff* v. *Strite,* 54 Md. 298, it was considered in this light.
Land was directed to be sold and the money given as by the
will, and it was held that as to that part given to S. S. imme-

diately he took an indefeasible right at testator's death; but as to that part bequeathed to him subject to the widow's life estate, an estate vested in him conditionally only, and upon his death in the life time of the widow, it became divested and went over to those embraced by the description of "or his heirs", and consequently assignees claiming under a deed of trust made by S. S. had no claim to the fund. See also *Brent* v. *Washington,* 18 Grat. 526, on this view.

It cannot be said that the words "or their children" were used to prevent lapse from death of a child in the testator's life, because likely those very words by their own force would prevent a lapse, and also because section 12, chapter 77, Code, would prevent it. He meant something else. "But although in the case of an immediate gift, it is generally true that a bequest over in the event of the death of a preceding legatee, refers to death in the life of the testator, yet this construction is only made from the necessity of the thing, and consequently, where there is another point of time to which such dying may be referred (as in the case where the bequest is to take effect in possession at a period subsequent to the testator's death) the words are considered as applying to the event of the legatee's dying in the interval between the testator's death and the period of vesting in possession." Jarman page * 1568. I repeat that I consider this a case of contingent remainder. In a note by the able author Freeman, 10 Am. St. R. 477, it is stated that while the courts lean towards treating legacies as vested, yet "when there is no other legatory expression or intention than that implied in a direction to pay or distribute at a future time, or on a contingent event, the bequest, nothing else appearing, should be considered as contingent." Here, what else does appear fortifies this construction. He further says, that when legacies are payable at 21, if or when, in case, or provided the legatee attains 21, "or any other future definite period, these expressions annex the time to the substance of the legacy, and make the legatee's right depend upon his being alive at the time fixed for payment." If he dies before, his representative gets nothing. This will says the legacies are payable "at" the widow's death. Our conclusion is to reverse the decree dated 2d December, 1901, entered on 19th November, 1902, as a *nunc pro tunc* decree, so far as it decrees that by the will

of William Schaeffer each of his children living at his death took a vested remainder in fee in his estate, and that the deeds of trust from Emanuel Schaeffer and wife to Cleon Moore, trustee, dated 11th November, 1892, and the deed of trust made by John W. Schaefer to E. S. Troxell and Joseph Trapnell, trustees, of date 21st February, 1880, conveyed the interests severally of said grantors in said deeds  and that the interests of said grantors in said estate are liable for the debts in said deeds secured; and we reverse the decree made the 6th of December, 1901, so far as it directs the payment out of the fund belonging to the estate of William Schaeffer in the hands of Daniel Hefflebower, administrator, to Daniel Hefflebower of $1,744.69, and to the Geiser Manufacturing Company of $822.10, and to Frick & Company of $722.09, and we deny payment out of said fund of the debts secured by said deeds of trust. The cause is remanded for any order that be deemed proper not inconsistent with this decision.

<em>Reversed.</em>