H. H. Dawson *v.* Sevena E. Christopher *et al.*

(CC 627)

Submitted September 24, 1940.  Decided October 15, 1940.

*Dawson & Morgan,* for plaintiff.
*C. W. Good,* for defendants.

Kenna, Judge:

This cause was instituted in the Circuit Court of Kanawha County for the purpose of construing the will of Andrew Haynes, the complainant, H. H. Dawson, being one of the six children of Anastatia M. Dawson, the

testator's daughter. The trial chancellor overruled a demurrer to the bill of complaint, and upon his own motion certified to this court the legal questions thus arising.

The will under consideration reads as follows:

> "I bequeath to the children of my daughter Anastatia M. the one-half of my land, and the other half I give to Abraham P. Koontz, the land to be divided by beginning at some point of Potalico river and through to my back line, my second purchase included . . . I bequeath also to my widow her third of my land, her lifetime, to include the mansion house."

The problem of construction is based upon when the class of beneficiaries designated by the testator as "the children of my daughter Anastatia M.". is to be formed. The contention of the defendants below is that the class so designated is to be formed at the time of testator's death. Under the allegations of the bill of complaint if this contention is sustained the plaintiff, H. H. Dawson, not being then in existence, is excluded from the class and takes nothing under the provisions of the will. The position of the plaintiff, however, is that the class is not to be formed until the vesting of the devise to the class takes effect, and that it does not go into effect according to the terms of the will until after the life estate in a one-third undivided interest specifically devised to the testator's widow has terminated. If that theory is sustained, the plaintiff, who was born before the death of the widow, then becomes a member of the class and takes one-sixth of a half interest in the land owned by the testator at the time of his death.

The general rule is that a class of beneficiaries denominated by the terms of a will is to be formed at the time of the testator's death if the intention of the testator is not otherwise clearly indicated. *Patton* v. *Corley*, 107 W. Va. 318, 148 S. E. 120; *Stout* v. *Clifford*, 70 W. Va. 178, 73 S. E. 316. This rule seems to be based upon the fact that the law favors the vesting of estates, and for that reason is

frequently spoken of as a rule of convenience, exceptions to the operation of which are frequently indulged. The plaintiff submits that the testator's intention concerning the time at which the class is to be formed should be arrived at in the light of what he contends is the specific devise to the widow of an undivided one-third interest in the testator's land and the mansion house, the devise so created precluding both the enjoyment and the vesting of the estate in the testator's grandchildren during the lifetime of his widow, and therefore deferring the formation of the class until the widow's death.

It will be noted that the devise to the testator's widow is of "her third of my land", indicating that the testator believed that he was leaving his wife something to which she was fully entitled under the law. If the testator had gone no further than to "bequeath" his wife a life interest in one-third of his land thinking of it as her one-third, we are of the opinion that the provision then would have very clearly been only the confirmation of her dower interest, and we believe that the language which follows—"to include the mansion house"—is to be construed in conformity with the evident purpose expressed by the testator before that clause is reached, observing nothing in conflict between the two provisions due largely to the fact that according to the express language the mansion house is not in addition to the widow's one-third, but is to be included therein. Stating it differently, we believe that it is quite clear the testator did not have in mind an undivided one-third of his acreage, but that what he was seeking to do was to leave his widow one-third of the value of his land, she to be assigned the mansion house and that to be included in the total value she was to receive. Since this is in value exactly the dower interest that the widow would have received as "her third", we cannot view the provision made for her by the testator as being more than a recognition and confirmation of what she would have received had he died intestate, and if it be that, an implied purpose of the testator by that provision to defer the formation of a class until after the undivided life

estate terminates cannot be read into the will's provisions. The testator was not making to her a devise, but was simply recognizing an interest in her of which he could not deprive her. We do not believe that the allotment of the mansion house to the widow can be construed as indicating an intention to defer the formation of a class.

The widow has the right to occupy the mansion house when her dower becomes consummate until the time of the assignment. The assignment of consummate dower vests in the widow a life estate in severalty to the land assigned to her, or one-third in value of the aggregate. The mansion house is a part and parcel of the testator's landed estate. As part of dower it can be assigned to the widow, it having been held in *Jacobs* v. *Jacobs,* 100 W. Va. 585, 131 S. E. 449, that a life estate in the property of which a widow is dowable does not absorb her dower interest. Until our present statute the provisions of a will were not taken to be in lieu of dower, thus forcing an election, unless the purpose were plainly discernible. *Church* v. *Bull,* 2 Denio (N. Y.) 430, 43 Amer. Dec. 754 and footnote.

Although consummate dower prior to the assignment gives the widow the right to occupy the mansion house and it forms a part of the estate in which she is dowable, she cannot require its assignment to her either in lieu of or together with the part of the testator's land in kind to which she is entitled. *DeVaughn* v. *DeVaughn,* 19 Gratt. 556. A recent section of the West Virginia Code accords to the widow the right to occupy the mansion house if at the testator's death she is left with minor children of herself and the testator, and the right is conferred upon the widow to have the assignment delayed until the youngest minor child has become of age. There was no such statute when the dower of Mrs. Haynes became consummate.

We do not believe that the case of *Bently et al.* v. *Ash et al.,* 59 W. Va. 641, 53 S. E. 636, has any direct bearing upon the problem before us in this proceeding. In the *Bently* case the court was considering a devise to the testator's seven children, including his daughter, Emma-

zetta Bently. The latter interest was to pass "to her and her child or children". At the time of the testator's death, Mrs. Bently had only one child. The court held that the use of the words "child or children" quite clearly expressed the purpose of the testator to form a class, the membership of which should be open after his death and at all times to the issue of his named daughter. Obviously, this was the only way in which practical effect could be given to the testator's use of the word "children". Otherwise it would have been ignored. A different conclusion was reached in the case of *Martin* v. *Martin*, 52 W. Va. 381, 391 bottom, 44 S. E. 198, apparently due to the fact that in the *Martin* case there were children living at the testator's death and because that word had meaning at that time, the class was then formed.

Being of the opinion that the provision of the will of Andrew Haynes for the benefit of his widow was merely a provision confirming her right of dower and not a devise, and that a dower interest does not postpone the vesting of a direct devise in the same land and hence the formation of a class of devisees, the decree of the Circuit Court of Kanawha County is reversed and the cause remanded.

The trial chancellor did not pass upon the question of laches or of the statute of limitations, except to indicate in his written opinion that he did not consider the allegations of the bill of complaint sufficient to justify a bar by either, although the incoming of an answer and the taking of proof would result in the delay being very seriously considered upon final submission.

Although the trial chancellor's having held in abeyance his decision on the question of laches and the statute of limitations, we think, precludes the certification of the legal questions so arising to this Court, that aspect of this proceeding based upon the allegations of the bill we think nevertheless should be commented upon.

It appears from the bill of complaint that the will in question was dated March 21, 1875. The testator died the next day, leaving his widow, Susannah Haynes, a married

daughter, Anastatia M. Dawson, and her five then living children.

Returnable to May Rules, 1875, the will having theretofore been probated, Anastatia M. Dawson and Robert G. Dawson, her husband, instituted a proceeding attacking the validity of the will, the bill herein not disclosing upon what grounds.

The plaintiff, H. H. Dawson, was born November 28, 1876, twenty months after the testator's will was dated, and more than eighteen months after the testator's will was probated.

The plaintiff was not formally made a party to the chancery proceeding attacking the testator's will, but on December 20, 1876, Peter Fontaine was appointed a special commissioner to execute a partition deed between Koontz on the one hand and the children of Dawson on the other, it thus being obvious that the will was held to be valid. On December 29, 1876, R. C. Dawson was appointed guardian *ad litem* for all of the Dawson children, including the plaintiff. On April 15, 1877, the partition deed was executed, plaintiff not being a grantee. Testator's widow died in 1888.

The plaintiff at the age of seventeen in 1893, having been assured by his father and his brothers and sisters that he had no interest in his grandfather's land, moved into Nicholas County where he has since resided. He became of age in 1897. During the past ten years his brothers and sisters have made various conveyances of different parts of the land in question, and the present owners are made parties.

The recital of the facts disclosed by the allegations of the bill of complaint is made in order to preserve a convenient memorandum, as is reference to the case of *McMullin* v. *Matheney*, 104 W. Va. 317, 140 S. E. 10, where the subject of laches will be found fully discussed.

*Reversed; remanded.*