WHEELING DOLLAR SAVINGS & TRUST COMPANY

*v.*

JAMES K. STEWART *et al.*

(No. 9778)

Submitted January 29, 1946. Decided March 23, 1946.

704

*C. Lee Spillers, Russell B. Goodwin,* and *Goodwin, Nesbitt & Spillers,* for appellants.

*Tom B. Foulk,* for appellees.

LOVINS, JUDGE:

The purpose of this suit is to construe the will of Andrew S. Hare, and upon construction thereof to resolve a controversy between two group of claimants, the first consisting of the husband and adopted children of his deceased daughter, and the second consisting of his sister, nieces, nephews, and grand nephews.

Wheeling Dollar Savings & Trust Company, Trustee under the will of Andrew S. Hare, filed its bill of complaint against James K. Stewart, Ellen Wallace Stewart, infant, and Nancy Kennedy Stewart, infant, Edgar S. Hare, Mary E. Hare, Jane T. Hare, John T. Hare, William H. Hare, John E. Hare, Francis A. Hare, and Blanche Hare Wheeler. Subsequently an amended bill was filed making Wheeling Dollar Savings & Trust Company, executor of the will of Nancy Hare Stewart, a defendant. After a hearing on the pleadings and evidence, in which no disputed facts were developed, the trial chancellor decreed that Ellen Wallace Stewart and Nancy Kennedy Stewart, adopted children of James K. Stewart and his deceased wife, Nancy H. Stewart, are not included within the terms "descendant", "descendants", and "direct descendants", and similar terms as used in the will of Andrew S. Hare, and that the said adopted children take nothing under his will. It was also decreed that the persons constituting the class designated as "next of kin" of Andrew S. Hare, in his will, are to be determined as of February 5, 1944, the date of the death of said Nancy H. Stewart, and that the sister, nieces, nephews, and grandnephews of the said Andrew S. Hare take the remainder interest in the property held in trust under paragraph third of said will, including additions and accretions thereto, the sister taking one-half, the nieces and nephews one-tenth each, and the grandnephews one-thirtieth each.

The husband and adopted daughters of Nancy H. Stewart will be hereinafter designated "appellants", and the sister, nieces, nephews and grandnephews of Andrew S. Hare will hereinafter be referred to as "appellees". The corporate plaintiff, as trustee of the Andrew S. Hare Estate and also as executor of the estate of Nancy H. Stewart, makes no complaint of the final decree, presumably because its interest in the controversy is formal.

Under date of February 4, 1925, Andrew S. Hare, a

widower, executed his last will and testament, consisting of fifteen paragraphs. By the third paragraph of his will and a codicil thereto, he bequeathed to Dollar Savings & Trust Company, as trustee, moneys and securities amounting to two hundred and fifty thousand dollars "to be held in trust for the benefit of my daughter Nancy McHenry Hare and her direct descendants,". The bequest was made "in order to guard against the possibility of their ever being in want". The testator stated that he deemed "the property which my said daughter will have when she becomes of age sufficient for her needs and requirements". It is further provided that "* * * My trustee shall continue to hold and manage said trust fund until my said daughter shall die without leaving any descendant, or until all of her descendants surviving her shall have reached the age of twenty-one years or shall have died before reaching that age. In either case the said trust fund, with all undistributed income, shall then be distributed among my next of kin in equal shares per stirpes. * * * During the life of my said daughter my trustee shall pay the net income to her in such amounts as she may from time to time request, and in case she shall die leaving any descendant, the full amount of such net income shall be paid quarterly to her descendants in equal shares per stirpes; until the principal of said trust fund shall be distributed; * * *."

No bequests or devises made in other parts of the will and codicil hereinafter mentioned are in controversy, and such parts of the will and codicil are considered by us for the sole purpose of ascertaining from the entire will the intent of the testator. For such purpose the fourteenth paragraph of the will is quoted: "If my said daughter shall die within one year after my death, all provisions of this will intended for her benefit shall be void, and the portion of my estate which is above devised and bequeathed to her or for her use shall pass and be distributed to my next of kin as the same shall be designated by the laws of distribution of the state of West

Virginia then in effect. Provided, however, that if she shall leave any descendant surviving her, all of said portion of my estate intended for her benefit shall be held in trust by the said Dollar Savings and Trust Company, and managed and disposed of in the manner provided in Item Third of this will." Wheeling Dollar Savings & Trust Company is the successor of Dollar Savings & Trust Company by merger. It is to be noted that in other provisions of Andrew S. Hare's will and codicil, the other trust funds thereby established were to become a part of the trust fund created by paragraph third of his will upon attainment of the objects of the other trusts.

On the 18th day of October, 1926, Nancy M. Hare, daughter of testator, executed a trust agreement by which she transferred to Andrew S. Hare, her father, as trustee, certain personal property, making provision therein that if she should be survived by any child or children born to her or legally adopted by her, the income received after her death should be paid to or for the benefit of such child or children.

In less than three months after the execution of the trust agreement, the codicil to Andrew S. Hare's will was executed, adding fifty thousand dollars to the trust fund created by paragraph third, and making other changes in the will not necessary to be here stated.

Andrew S. Hare died December 13, 1928. His daughter, aged twenty-three, was then unmarried, and remained single until 1931, when she was married to James K. Stewart. Ellen Wallace Stewart, infant appellant, was adopted by James K. Stewart and Nancy H. Stewart, on December 23, 1936, and on February 16, 1940, they adopted Nancy Kennedy Stewart, the other infant appellant.

Three sisters of testator, Martha J. Hare, Mary E. Hare and Sarah E. Hare, for whom testator provided in his will, died without issue on November 14, 1933, December 31, 1934, and September 24, 1942, respectively. The testator was also survived by a sister, Blanche Hare Wheeler, who is now living. A brother of testator

predeceased him, and the descendants of said brother, two nieces, two nephews and three grandnephews, are now alive. Nancy H. Stewart, testator's only child died February 5, 1944, leaving a will, by which she devised and bequeathed her estate to her husband, James K. Stewart.

Two questions are presented by the pleadings and proof herein: (1) Are the adopted daughters of Nancy H. Stewart and her husband descendants or direct descendants, within the meaning of such or similar terms used in the will of Andrew S. Hare; and (2) are the persons who constitute the class designated as "next of kin" in the will of Andrew S. Hare to be determined as of the date of his death, or as of the date of the termination of the trust created by paragraph third of his will? The trial chancellor answered the first question in the negative, and held that the next of kin was to be determined as of February 5, 1944, the date of Nancy H. Stewart's death, the trust ending on that date.

We are here called upon to construe a will of some length, and containing involved provisions. The paucity of rules of general application to the construction of wills and the reasons therefore are well stated by Judge Storey in his opinion in the case of *Sisson v. Seabury*, 1 Sumner 235, 239, *et seq.*, (U. S. Courts, Vol. 1, First Circuit) : "The difficulty of construing wills in any satisfactory manner, renders this one of the most perplexing branches of the law. The cases almost overwhelm us at every step of our progress; and any attempts even to classify them, much less to harmonize them, is full of the most perilous labor. Lord *Eldon* has observed, that the mind is overpowered by their multitudes, and the subtilty of the distinctions between them. To lay down any positive and definite rules of universal application in the interpretation of wills, must continue to be, as it has been, a task, if not utterly hopeless, at least of extraordinary difficulty. The unavoidable imperfections of human language, the obscure and often inconsistent expressions of intention, and the utter inability of the

human mind to foresee the possible combinations of events, must for ever afford an ample field for doubt and discussion, so long as testators are at liberty to frame their wills in their own way, without being tied down to any technical and formal language. It ought not, therefore, to surprise us, that in this branch of the law the words used should present *an infinite* variety of combinations, and thus involve an infinite variety of shades of meaning, as well as of decision."

But a few principles of general application in the law of wills have been approved and applied. It is a cardinal principle in the law of wills that the intent of the testator will be sought, and, when ascertained, will be given effect, if not contrary to some positive rule of law. *Bently et al. v. Ash et al.*, 59 W. Va. 641, 646, 53 S. E. 636; *Hinton v. Milburn,* 23 W. Va. 166, 171. The testator's intention must be ascertained from the will itself, when possible, and every word shall be given effect, if consistent with the general intent of the testator expressed in the whole will. *Graham v. Graham,* 23 W. Va. 36; *Hinton v. Milburn, supra.* "Technical words used must be construed to have their proper meaning, unless it appears from the will, that the testator used them in a different sense." *Hinton v. Milburn, supra.*

We are not concerned here with a question relative to the intestacy of Andrew S. Hare or his daughter, each having left a will, nor with the rights of the adopted children relative to descent and distribution from their mother by adoption.

But we are asked to look to the statutes of descent and distribution and the statute concerning the rights of adopted children to inherit from their parent or parents by adoption. Those statutes do not control, but may be considered as aids to the construction of the will of Andrew S. Hare. At the date of the will Section 4, Chapter 122, Code of 1923, was in force. At the time of testator's death the provisions of Chapter 74, Acts of the Legislature, 1925, were in force. But the statutes ex-

isting prior to the Code revision of 1931 are not applicable, having been substantially changed prior to the adoption of the first child. Changes in the adoption statute made at the regular sessions of the Legislatures of 1941 and 1943 are likewise inapplicable, having been · made after the adoption of said children. The pertinent and applicable statute in substance provided that an adopted child should be invested with every legal right in respect to inheritance in the estate of a parent or parents by adoption as if the child were born to the parent or parents in lawful wedlock, but that the adopted child should not take property expressly limited to the · heirs of the body of the parent or parents by adoption, or be entitled to take property coming from the lineal or collateral kindred of a parent or parents by right of representation. Code, 48-4-5.

The statute of descent and distribution applies to cases of intestacy, and is of little or no aid in arriving at the intention of Andrew S. Hare, as expressed in his will. The statute relating to adopted children in force at the time the were adopted goes no farther than to provide for inheritance from the parent or parents by adoption. Moreover, such deprives adopted children of the right to take from lineal or collateral kindred by representation. Of course, if the question were one relating to descent and distribution of the estate of Nancy H. Stewart, the statutes hereinabove adverted to would probably control, but the question here relates to the construction of the will of a stranger to adoptions consummated after his death. Question No. 1 is of first impression in this jurisdiction, but consideration of the cases herein cited as bearing thereon will serve to show some diversity of judicial opinion. The modern trend, however, is definitely in accord with the conclusion we reach.

A bequest of a life estate to a son and on his death absolutely to his child or children and their. heirs, does not include an adopted child of the son. *In re Puterbaugh's Estate*, 261 Pa. 235, 104 A. 601. Provisions made in the will for the grandchildren of the testator

do not include a child adopted by testator's son after testator's death. *Smith v. Thomas,* 317 Ill. 150, 147 N. E. 788. See *Comer v. Comer,* 195 Ga. 79, 23 S. E. 2d 420; *In re Corr's Estate,* 338 Pa. 337, 12 A. 2d 76, 77; *Savells v. Brown's Guardian,* 187 Ky. 134, 218 S. W. 462; *Melek v. Curators of University of Missouri,* 213 Mo. App. 572, 250 S. W. 614. In the case of *Wilder v. Wilder,* 116 Me. 389, 102 A. 110, the same doctrine was applied to a trust estate created by deed. There is a line of authorities treating the word "heirs", or its equivalent, which is reconcilable with those dealing with the word "children", or its equivalent. In a devise of a life estate to a son for his life and after his death to his legal heirs, a child adopted by the son is included in the phrase "legal heirs". *Dickenson v. Buck,* 169 Va. 39, 192 S. E. 748. A will bequeathing a life estate in property to children of the testator, and on their death to their heirs at law includes an adopted child of testator's son. *St. Louis Union Trust Co. v. Hill,* 336 Mo. 17, 76 S. W. 2d 685. It will be noted, however, in the *Hill* case that the decision was, in a large measure, grounded upon provisions of the statute relating to adoption then in force in that jurisdiction. In the case of *Smith v. Hunter,* 86 Ohio 106, 99 N. E. 91, it was held that where a testator created a life estate in trust for his daughters, and limited succession to the daughters' heirs at law, that an adopted child of one of the daughters was entitled to take under the will. See *Trenton Trust Co. v. Gane,* 125 N. J. Eq. 389, 6 A. 2d 112.

There are well considered cases dealing with the term "descendant" or those of similar import which hold that adopted children are not included within such terms used in the will of a stranger to the adoption. Adopted children are not included within the term "lineal descendant," as used in the will of a stranger to the adoption, unless the language of the will or the circumstances surrounding its execution show that testator intended to include such children. *Appeal of Wildman,* 111 Conn. 683, 151 A. 265; *Hale v. Hale,* (Ill. App.) 237 Ill.

410. We are not inclined to follow the reasoning of the Court in the case of *Warren v. Prescott et al.*, 84 Me. 483, 24 A. 948, wherein the Court held that the term "lineal descendant" included an adopted son of a legatee. An adopted child was held to be included in the term "issue" used in the will of a person not a party to the adoption. *Hartwell v. Tefft*, 19 R. I. 644, 35 A. 882. But upon examination of many authorities we are not persuaded that the holding in the case of *Hartwell v. Tefft, supra,* is correct.

Obviously, the word "descendant" in its technical sense comprises issue of every degree. 2 Jarman on Wills, 6th ed. 103. We think there is a clear distinction between the terms used by the testator in this case, and such words and phrases as "heirs" and "legal heirs", the latter being descriptive of a status given by law rather than connoting relationship to the testator by consanguinity. The whole will in this case indicates an intent of the testator and a general scheme to provide for his relatives by blood.

There is another fact which is material, if not controlling. The infant appellants were adopted by Nancy H. Stewart after testator's death. In such situation, practically all of the decided cases lay down the rule that where provision is made by the testator for children or descendants of some person other than himself, a presumption arises that the child or descendant of such other person is not included in a will, in the absence of clear and explicit provision therein evidencing an intent to include them, or where the circumstances surrounding the execution of the will clearly indicate such intent. In the instant case there is no circumstance surrounding the execution of the will, nor any language therein, which, in any way, indicates that testator intended to include children adopted by his daughter several years after his death. It would do violence to the plain language of the will to say that he intended to make provision for strangers to his blood, of whose existence he probably had no knowledge. The words "descendant" and "de-

scendants" and "direct descendants", as used in this will, mean natural children of Nancy H. Stewart, and are similar in meaning to the word "issue". With reference to an adopted child being within a class in a testamentary gift in circumstances similar to the instant case, see notes, 70 A. L. R. 621, and 144 A. L. R. 670, where the cases are digested and discussed.

We are urged to consider the fact that the possibility of adoption of children was brought to testator's attention by the execution of the trust agreement by testator and his daughter approximately three months before he executed his codicil. That may be a strong indication that he was willing for his daughter to provide for her adopted children, but it is no indication of his intention that he intended to provide for such children out of his own estate. Had he so intended, he could have included a provision in his codicil executed shortly thereafter, which he did not do. The execution of the codicil was a republication of the will, testator stating in the eleventh paragraph thereof: "I hereby confirm all other provisions of my said will * * *." 1 Jarman on Wills, 6th Ed., 190. The will in that respect after its republication remained as originally drafted.

A bequest of a chattel for life with limitation over formerly vested an absolute property in the first taker. But it is now settled that life estates and remainders in personalty, not consumable by use, may be created, and that upon the expiration of the life estate a remainder therein may vest. *Bartlett v. Patton,* 33 W. Va. 71, 10 S. E. 21.

As a general rule, in the absence of a contrary intention, a testamentary disposition takes effect as of testator's death. *Dawson v. Christopher,* 122 W. Va. 543, 11 S. E. 2d 175; *Patton v. Corley,* 107 W. Va. 318, 148 S. E. 120. That general rule has been embodied in a statutory enactment, reading as follows: "A will shall be construed with reference to the estate comprised in it, to speak and take effect as if it had been executed

immediately before the death of the testator, unless a contrary intention shall appear by the will." Code, 41-3-1. This court, in resolving a question strikingly similar to the second question in this case, held that the intention of the testator should control and that the estate in remainder would vest at the time intended by testator. *Natl. Bank v. Kenney*, 113 W. Va. 890, 170 S. E. 177. See *Bently et al. v. Ash et al., supra;* 49 A. L. R. 174, note.

The language used in the third paragraph of the will clearly shows that testator intended that the remainder in the trust property therein bequeathed should not vest until the termination of the trust, and that his daughter took a life estate therein. He directed that the principal and undistributed income be distributed to his next of kin *per stirpes*. Such provision was needless if testator intended to bequeath a life estate, as well as a remainder to his only child. Other parts of the will make provision for the blood relatives of testator. He shows a particular solicitude for the comfort and well being of his sisters. His commendable interest in the education of his grandnephew is an indicium of his intention to provide for his relatives by blood. The general scheme for disposition of his property is clearly apparent upon consideration of the whole will and codicil. To us testator's intention is clear. If it were held that testator intended to bequeath a life estate in the trust property to his daughter and also the remainder therein to vest in her at his death, it would permit her to dispose of the remainder of the trust property by will or otherwise, thus frustrating the testamentary disposition made by him. The language of the will, as well as the circumstances, leads to the conclusion that testator intended the remainder in the trust property bequeathed by the third paragraph thereof to vest at his daughter's death without descendants. The daughter having left no descendants, the remainder in the trust property goes to testator's next of kin. Appellant, James K. Stewart, takes no property bequeathed in trust by the third par-

agraph of the will of Andrew S. Hare, or any addition thereto.

Finding no error in the final decree of the Circuit Court of Ohio County the same is affirmed.

*Affirmed.*