Elwilda Tharp

*v.*

Earl M. Tharp, *et al.*

(CC737)

Submitted April 6, 1948. Decided June 15, 1948.

LOVINS, JUDGE, dissenting.

*Ralph W. Haines* and *George H. Williams,* for plaintiff.

*J. S. Zimmerman* and *G. K. Kump,* for defendants.

RILEY, PRESIDENT:

Elwilda Tharp filed her bill of complaint in the Circuit Court of Hampshire County under the Uniform Declaratory Judgments Act, Acts of the West Virginia Legislature, 1941, Chapter 26, to have ascertained and declared her right and interest, as the heir-at-law of her deceased son, Eugene Tharp, in the estate of her late father-in-law, W. L. Tharp. In addition the bill prayed for an assignment of alleged dower of the plaintiff through her estranged husband, Earl M. Tharp, who was the only child of W. L. Tharp and Ellen G. Tharp; payments out of W. L. Tharp's estate under a certain separation settlement made between plaintiff and her husband; the appointment of a receiver for W. L. Tharp's estate; and reference of the cause to a commissioner in chancery.

The bill alleges that W. L. Tharp died testate in November, 1927, survived by his widow, Ellen G. Tharp, his son, Earl M. Tharp, his daughter-in-law, Elwilda Tharp, and his grandson, Eugene Tharp. Testator's will, dated the 2nd day of February, 1927, nominated his son and his widow as executor and executrix, respectively, with

power to sell the real estate, and devised all his real estate and personal property, in an appraised value of $42,044.41, consisting of farm lands, town property, livestock, farm equipment, stocks and bonds, and cash to his son, Earl M. Tharp, and his widow, Ellen G. Tharp, "for and during the natural life of said Ellen G. Tharp, subject, however, to this, that at the decease or remarriage of said Ellen G. Tharp, the whole of said real estate and personal property shall pass to and become the absolute property of said Earl M. Tharp and his children, and the remarriage of said Ellen G. Tharp shall ipso facto terminate her Executrixship". The quoted provision of the will is the basis upon which the plaintiff seeks to have her alleged interest in the estate of W. L. Tharp, deceased, determined.

The death of Eugene Tharp, only grandchild of W. L. Tharp, after the latter's demise but before the death or remarriage of Ellen G. Tharp, gives rise to the immediate question under consideration in this case. Plaintiff maintained in her bill, as she asserts here, that Eugene Tharp and his father, Earl M. Tharp took a joint vested remainder at testator's death in the latter's estate, preceded by the life estate in Ellen G. Tharp, and that upon the death of Eugene Tharp intestate, unmarried, and without issue, she and her husband under the laws of descent and distribution, as the surviving father and mother of said decedent, took a joint one-half vested remainder in their son's estate, her interest in testator's estate being an undivided one-fourth interest therein.

The defendants, Earl M. Tharp and Ellen G. Tharp, demurred to the bill of complaint on the main grounds that (1) the bill, seeking as it does, relief in addition to the declaratory judgment could not be maintained under the declaratory judgments act; and (2) that Eugene Tharp's interest in testator's estate was contingent, i. e., could not vest until either the death or remarriage of his grandmother, and Eugene, having died prior to the happening of either contingency, was never seized of any interest in his grandfather's estate, and, therefore, no part of such estate passed through him to plaintiff.

In sustaining the demurrer, the trial court held: (1) That plaintiff was entitled to a declaration and determination in this suit of her rights and interests, if any she has, in testator's estate, and that the demurrer should not be sustained on that ground; (2) that Eugene Tharp's only interest in testator's estate was contingent upon his surviving either the death or remarriage of his grandmother, Ellen G. Tharp, and having died prior to the happening of either of such contingencies, there was nothing to pass under the laws of descent and distribution to his mother and father as his heirs-at-law; and (3) that the prayer for relief has no proper place in this suit, the only justiciable questions involved being what, if any interest, Eugene Tharp took under the fifth paragraph of testator's will; and having sustained the demurrer certified the following questions:

" (1) Did the Court err in its rulings upon said demurrer or any of the several points thereof?

" (2) Did Eugene Tharp receive, under the will of W. L. Tharp, such estate or ownership in real estate or personal property as passed under the law upon his death intestate and unmarried to his mother, Elwilda Tharp, the plaintiff?

" (3) May the relief and all the relief prayed for in the bill be determined in this declaratory judgment proceeding?"

A preliminary question presented by the trial court's certificate is whether this suit may properly be maintained under the Uniform Declaratory Judgments Act (Acts, West Virginia Legislature, 1941, Chapter 26). In her bill of complaint, plaintiff asserts that she has a present and vested interest in the estate of William L. Tharp, deceased, and evidently, as it appears from the allegations of the bill of complaint, she is asserting this right for the purpose of conserving her interest in the estate and preventing dissipation thereof by the executor and executrix. From defendant's demurrer it is quite clear that defendant controverts plaintiff's asserted right. So this certificate presents a justiciable question which lends itself to solution in a declaratory judgment proceeding. *Crank* v. *Mc-*

*Laughlin,* 125 W. Va. 126, 23 S. E. 2d 56. Section 2 of the Uniform Declaratory Judgments Act specifically provides: "Any person interested under a deed, will, written contract or other writings constituting· a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." Section 6 of the Act provides that the court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. However, it is quite evident that this suit will remove the uncertainty involved here, and will serve to bring to a speedy termination the matters in controversy between plaintiff and defendant. If plaintiff has no interest in testator's estate, the controversy between the parties is terminated then and there. On the other hand, if she has, as she asserts in her bill of complaint, a vested interest as one of the heirs of her deceased son, a determination of this interest will open the way to her to protect by proper proceedings such interest as she has in testator's estate. So we think that the provisions of the Uniform Declaratory Judgments Act are fully met, and the trial court was entirely right in overruling this point of the demurrer.

In the appraisement of this case, as in every case which involves the question whether a remainder is vested or contingent, this Court is aided by the well-settled rule of construction of wills that all devises and bequests, in the absence of a clear indication by the will that the vesting be postponed until some future event, are to be construed as vesting at testator's death. 1 Harrison's Wills and Administration, Section 262, and cases cited under Note 4. And where the provisions of a will render doubtful whether the estate is vested or contingent this Court should regard the estate as vesting upon the happening of the earliest possible time. *Hinton v. Milburn,* 23 W. Va. 166; *Stout v. Clifford,* 70 W. Va. 178, 73 S. E. 316. However,

the rule in favor of the vesting of estates, no matter how strongly grafted into the law of future interests, should not be invoked to do violence to the intent of the testator as expressed in his will. After all, as suggested by the Virginia Court in *Roneys* v. *Roneys,* 7 Leigh 13, cited and quoted by Harrison in said Section 262: "In the construction of wills, we must always keep in mind, that the property is the testator's own; that his control over it is only limited by the law; that he may give it in equal or unequal portions among his children, or disinherit, at his will or caprice, any or all of them." In that case the Court, notwithstanding the construction of the will adopted by it, cut off a decedent's widow and daughters from any share in the estate, decided that the clear intent of the testator, as evidenced by the harsh provisions of the will, should be carried out. So under the rule in favor of early vesting, Eugene Tharp, being alive at the time of testator's death and in a position to take immediately upon the expiration of the estate, had a vested interest, unless under the rule set forth by the Virginia Court in the *Roneys* case, the will manifests a contrary intention on the testator's part.

A testamentary clause identical to the one under consideration is not to be found in any case decided by this Court. However, the case of *Schaeffer's Adm'r* v. *Schaeffer's Adm'r,* 54 W. Va. 681, 46 S. E. 150, presented a problem which is almost the very antithesis of that involved here. In that case the testator's will devised and bequeathed to his wife a life estate in his real and personal property, with power to sell some realty and consume its proceeds, and then provided that "at the death of my wife what real estate and personal property may be left shall be sold and divided equally among my children, *or* their children, *or* their representatives." (Italics supplied.) Judge Brannon in deciding that the testator's children took no absolute or vested estate during the life tenancy, and that such estate could vest only in those living at its close, stressed the words "or children". He says: "He [the testator] used more words than those necessary" to give his children a vested estate. "What did he mean", the opinion reasons, "by these added words 'or their chil-

dren?' He did not mean 'and' their children. We cannot change 'or' into 'and'. * * * We must give 'or' its natural, usual grammatical effect, a disjunctive effect." From this language the Court drew the thesis that testator "plainly" meant to give his estate to "his own children, if living at date of distribution after the death of his widow, and, if not, then to their children." It may well be inferred that if the testator had used the words "among my children and their children", the Court would have concluded that the testator's children and their children jointly would have taken a vested remainder in the estate; and by the same token, under the provisions of the instant will, Earl M. Tharp and his children took a remainder after the death or remarriage of Ellen G. Tharp which vested at testator's death.

As a will speaks as of the time of death, it may be well to view the situation which existed at testator's death for the purpose of ascertaining whether for the Court to hold that under the will Eugene took a vested remainder in the estate after the death or remarriage of Ellen G. Tharp would be an unconscionable construction of the will. It is contended that if Eugene took a vested remainder, his death intestate without issue would vest a part of the estate in plaintiff, the estranged wife of testator's son, a person outside testator's blood, who would not be the natural object of testator's bounty. There would be much force to the position if Earl M. Tharp and Elwilda Tharp had been estranged at the date of testator's will and his death, but such was not the case, as disclosed by this record. Not until some time after testator's death did the estrangement occur, during the course of which Eugene was killed. In the circumstances we cannot say that the testator having made a devise to his grandson would desire to withhold from Eugene's mother, the plaintiff herein, the right as an heir of his grandson, though such right involved a part of testator's estate.

But it is reasoned that there being only one child at testator's death, the testator by the use of the words "Earl M. Tharp and his children" intended to establish a class

which did not vest until the expiration of the life estate or remarriage of Ellen G. Tharp. With this position we do not agree. By the use of the word "children", when there was only one child of Earl M. Tharp living at testator's death, the testator intended to establish a class composed of Eugene Tharp and any and all other children who may have been born to Earl M. Tharp between testator's death and the death or remarriage of Ellen G. Tharp. In *Prichard* v. *Prichard*, 83 W. Va. 652, 98 S. E. 877, syl. 1, this Court held: "A gift to a class exists when the instrument creating it directs the distribution of an aggregate sum to a body of persons, commonly designated by some general name as 'children', * * * uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the *ultimate* number of persons in the designated class." (Italics supplied.) It is true, as suggested in the able opinion filed by the trial court, that the use of the word "children" demonstrated that testator was reckoning with future events. But where an estate, as here, must be kept intact and not subject to distribution until the occurrence of designated events, certain by the very nature of things ultimately to occur, the rule of convenience which sometimes serves to close a class as soon after the death of the testator as possible, does not apply so as to preclude other children which may be born before distribution may be made. *Walker* v. *Shore*, 15 Ves. 122; *Ayton* v. *Ayton* (1787), 1 Cox 327; II Jarman on Wills, sixth edition 1667; 2 Simes, Law of Future Interests, Section 378. Under a future gift to a class, that is where there is an intervening estate as involved here, a child or children living at testator's death takes a vested interest, subject to divestment *pro tanto* on admission of children born after decedent's death but before expiration of the anterior estate. *Hutcheson* v. *Jones*, 2 Mad. 124; II Jarman on Wills, sixth edition, 1692; Restatement of the Law, Vol. 3, Property, Future Interests, Chapter 22, Section 285, page 1499. The principle involved here is enunciated in 1 Harrison on Wills and Administration as follows: "A devise to a

parent for life with remainder to his children, vests in each child at its birth a vested estate, subject, however, to defeasance to the extent that the child's estate will open up and let in subsequent born children." This principle has been applied in West Virginia to an immediate gift. In *Bently* v. *Ash, et al.*, 59 W. Va. 641, 53 S. E. 636, in devising his real estate to his seven children, testator provided that the share which he devised to one of them, who at testator's death had only one child, should go "to her and her child and children, to be held by them free from the claim or claims of control" over the same by the daughter's husband, this Court held: "That not only the child living at the date of the will and at the time of testator's death, but all children born to E. [the daughter] thereafter, took each in fee equally under the will with E. the mother." (Syl.) In *Cooper* v. *Hepburn,* 15 Gratt. 551, in which testator devised to a life tenant "during his natural life, and to his children, if he should have lawful issue", and then to his grandchildren equally and their heirs forever, the life tenant not being married at the time of testator's death, but afterwards marries and has lawful children, the Virginia Court held that the contingent estate in the grandchildren having been defeated by the marriage of the life tenant and the birth of children, the remainder was vested in the first child born after testator's death subject to open and let in the after-born children, as they severally came into being.

In the instant case the anterior estate is for the life of Ellen G. Tharp, with a gift over to Earl M. Tharp and a class (his children), upon the special limitation that the life estate shall cease upon the remarriage of Ellen G. Tharp, 2 Simes, Future Interests, Section 278. As both of the happenings provided for in the will for the gift over to Earl M. Tharp and his children will ultimately occur, the special limitation only hastening the time for the gift over, there is no contingency which will defeat the devise of the remainder to Earl M. Tharp and his children. But as distribution surely must be kept open until the death or remarriage of Ellen G. Tharp, the rule of convenience, which sometimes prompts an early distribution of an es-

tate does not apply, and the residuary estate, under the authorities heretofore cited, vested *eo instante* at testator's death in Earl M. Tharp and Eugene Tharp, subject to the divestment of Eugene Tharp's interest *pro tanto* on the birth of other children of Earl M. Tharp before the expiration of the prior estate by the death or remarriage of Ellen G. Tharp.

This case is to be distinguished from *Dawson* v. *Christopher*, 122 W. Va. 543, 11 S. E. 2d 175, in which this Court held that a devise to the children of testator's daughter of an interest in land, the daughter being alive, with children, served to form a class of devisees composed of the daughter's children living at the time of testator's death, a class which did not open to take in children born to the daughter thereafter. In that case there were children of the daughter living at the testator's death, and there was no prior estate which would prompt the postponement of distribution under the convenience rule. Likewise the case is to be distinguished from *Bently* v. *Ash, supra,* because testator's daughter had children, while in the former case there was only one child. We think by the use of the word "children", when Earl M. Tharp had only one child living at the time of testator's death, testator intended to establish a class at his death which would not close until the death or remarriage of his wife, Ellen G. Tharp. In arriving at this conclusion, we have considered that the will provides that "at the death or remarriage of Ellen G. Tharp, the whole of said real estate and personal property *shall pass to and become the absolute property of* said Earl M. Tharp and his children." (Italics supplied). The words "shall pass to and become" should be interpreted in connection with the words "the absolute property of". This language, in our opinion, does not indicate an intent on testator's part to postpone the vesting of his estate until the death or remarriage of his widow. On the contrary, the language serves to indicate that testator intended that his residuary estate which, at testator's death, was subject to the life estate on a special limitation shall, upon the death or remarriage of his widow, become

the absolute property of testator's son and the son's children, free from the encumbrance of the anterior estate in favor of the son and widow.

We are of opinion that Elwilda Tharp, who, together with her husband, Earl M. Tharp, are the only heirs-at-law of Eugene Tharp, has a one-fourth undivided interest in testator's estate, subject to the prior life estate on the special limitation of the remarriage of Ellen G. Tharp, subject to divestment *pro tanto* in favor of other children born of Elwilda Tharp, but not including any child which may be born to her in the event she remarries.

Plaintiff's interest in decedent's estate being actual, cogent and vested, she has the right under Section 8 of the Uniform Declaratory Judgments Act by petition in the proper forum to obtain such relief in regard thereto as to which she may be entitled.

The questions, what, if any title or interest, the plaintiff has in the estate of the deceased, William L. Tharp, under said decedent's will, dated February 2, 1927, and whether the plaintiff, Elwilda Tharp, has a right to maintain this suit under the Uniform Declaratory Judgments Act, have been disposed of in the foregoing discussion. They present the only questions properly before this Court under the Act. All other matters, such as relate to plaintiff's claim for inchoate right of dower, the separation agreement, and related matters, together with the prayer based on such allegations for relief are not properly cognizable in this suit under the Uniform Declaratory Judgments Act, and to this extent the demurrer to the bill of complaint was properly sustained. In *West Virginia-Pittsburgh Coal Co. v. Strong,* 129 W. Va. 832, 42 S. E. 2d 46, this Court recognized "the difference between simply adjudicating 'right, status and other legal relations' and the granting of relief, Code, 55-13-8, providing expressly that relief may be sought by petition following a declaratory judgment." Section 8 of the Act expressly provides: "Further relief based on a declaratory judgment or decree may be granted wherever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant

relief. * * *" Elwilda Tharp's right and interest having been determined here she is at liberty, under the foregoing section of the statute, to proceed by petition as she may be advised to obtain such relief in the premises as she may be entitled to.

For the foregoing reasons the rulings of the circuit court are affirmed in part, reversed in part, and the cause remanded to be dealt with in conformity with the principles herein announced.

> *Rulings affirmed in part;*
> *reversed in part; and*
> *the cause remanded.*

Lovins, Judge, dissenting:

In my opinion the parts of the syllabus and opinion which hold that Eugene Tharp took a vested remainder under the will of his grandfather, W. L. Tharp, are erroneous and constitute an unsound statement of law. The procedural aspects of this litigation, involving the application of Uniform Declaratory Judgments Act, are correctly decided.

Did Eugene Tharp take a contingent or vested remainder in the estate of his grandfather? That is the controlling question. If the will of W. L. Tharp created a contingent remainder in Eugene Tharp, the latter had no property which was transmissible under the law of descent and distribution and the plaintiff would not be entitled to any part of W. L. Tharp's estate. On the contrary, if the will created a vested remainder in Eugene Tharp, as decided by the majority of this Court, the rights of the plaintiff as an heir and distributee of her deceased son are plain. I think it is clear that the will of W. L. Tharp did not operate to vest at his death any property in Eugene Tharp and that the vesting of the property under said will was, by the clearly expressed intention of the testator, postponed until the death or remarriage of Ellen G. Tharp.

The majority opinion is based on two propositions: (1) That a will takes effect on the death of the testator

in the absence of a contrary intent clearly expressed in the will; and (2) That the law favors the early vesting of estates.

It was formerly held that a will took effect upon the death of the testator regardless of the testator's intent. But this Court, in the case of *Schaeffer* v. *Schaeffer,* 54 W. Va. 681, 46 S. E. 150, vigorously criticized that rule and foreshadowed a subsequent holding by this Court wherein it was said: "Words of survivorship contained in a will will be construed according to their usual and common acceptation, unless a different meaning plainly appears to have been intended thereby; and will be referred to the event plainly intended to accomplish the purpose of the testator, whether that event be before, at the time of, or after the death of the testator." *Dent* v. *Pickens,* 61 W. Va. 488, 58 S. E. 1029. To the same effect are: *Neal* v. *Hamilton Co.,* 70 W. Va. 250, 73 S. E. 971; *Prichard* v. *Prichard,* 83 W. Va. 652, 98 S. E. 877; *Natl. Bank* v. *Kenney,* 113 W. Va. 890, 170 S. E. 177; *Brookover* v. *Grimm,* 118 W. Va. 227, 190 S. E. 697; *Trust Co.* v. *Stewart,* 128 W. Va. 703, 37 S. E. 2d 563.

The diversities of facts and language involved in will cases render it difficult to establish and state general principles applicable to all cases. But no citation of authority is required for the proposition that the intention of the testator is controlling if, in carrying out that intention, no principle of law is violated. In the instant case we are only called upon to enforce the intention of W. L. Tharp, plainly stated in his last will and testament. Such intention is ascertainable from the entire will, is clearly stated therein, and, violating no principle of law, overrides the principle relative to the time the property vested and also that principle of law relative to the early vesting of estates.

W. L. Tharp intended his property to be used and enjoyed by his wife and son so long as his widow lived and remained unmarried, and, upon the happening of either event, the children of Earl M. Tharp then living and Earl

M. Tharp should take vested remainders. A quotation of the pertinent part of the will discloses that intention, expressed in direct, simple and unambiguous language as follows: "* * * subject, however, to this, that at the decease or remarriage of said Ellen G. Tharp, the whole of said real estate and personal property shall pass to and become the absolute property of said Earl M. Tharp, and his children * * *." No other part of the will modifies, changes or in any way weakens the language of the will quoted above.

Notwithstanding this clear language the opinion of the Court transmutes the word "children" to the word "child", although such construction is softened by reasoning in the opinion that the child living at the death of the testator was a member of a class and whatever property vested in him on the death of his grandfather was subject to be divested upon the birth of other children of Earl M. Tharp. That a remainder was vested in one member of the class at the testator's death subject to being divested *pro tanto* upon the birth of other members of such class after the death of the testator, creates, to say the least, an unusual estate in remainder.

In this case, according to the Court's reasoning, a certain portion of W. L. Tharp's estate is vested, but the birth of other grandchildren subsequent to his death takes away from the sole child living at the time of his death. I think that such reasoning is fallacious in that respect and that the members of the class, to-wit, the children of Earl M. Tharp, are to be determined at the time of Ellen G. Tharp's death or remarriage. The Court's opinion certainly leaves much to be desired as to the question of how much of the estate was inherited by Eugene Tharp. So far as shown by this record Earl M. Tharp may have other children which, according to the Court's opinion, would reduce the amount taken by Eugene Tharp, thus leaving an undetermined and uncertain question in disposing of W. L. Tharp's property.

I do not think it is the function or right of a court to substitute their intention for that of the owner of the

property who has the right to dispose of it as he sees fit subject to rules of law, thus establishing judge-made wills. In this case the testator clearly intended to provide for his widow, son and grandchildren and said so in no uncertain terms. Nevertheless, the majority of the Court reaches such conclusion that a substantial part of his estate goes to the son's wife, who is now estranged from her husband. That estrangement, of course, did not exist at the time of the testator's death. I think the intention of the testator is thwarted and that the rigid application of the rules that a will takes effect at the death of the testator and that an estate should be vested as early as possible, violates the modern rule allowing a testator to dispose of his property to whom, and at such time as he desires. It is my opinion that Eugene Tharp took only a contingent remainder in the estate of his grandfather and such estate, not having vested during the life of Eugene Tharp, was not transmissible under the laws of descent and distribution.

For the foregoing reasons, I respectfully dissent from the Court's opinion and would affirm the judgment of the trial court.